MORELAND v. MITCHELL COUNTY.

1. **Bridges:** LIABILITY OF COUNTY: NEGLIGENCE. Bridges requiring in their construction an extraordinary expenditure should be built and maintained by the county, and the county is liable for injuries occasioned by their negligent construction or the failure to keep them in repair.

2. ———: ———: ———. That a part of the cost of constructing a county bridge was defrayed by voluntary contributions and expended under the direction of others than agents of the county, does not relieve it from its duty to keep the bridge in repair.

3. ———: ———: APPROACHES. It was *held* to be a question of fact for the jury to determine, whether the superstructure forming the approach to a bridge constituted a part of the bridge.

4. **Instructions:** SHOULD BE BASED UPON THE FACTS. Instructions based upon a state of facts not sustained by the evidence, or not including the real facts in issue, are erroneous.

5. **Evidence:** EXPERTS. Witnesses may testify as experts when they base their testimony upon facts not coming within the general experience.

*Appeal from Floyd Circuit Court.*

FRIDAY, APRIL 23.

THIS action is brought to recover damages for injuries to himself and for moneys expended in curing his wife of injuries sustained by her in consequence of being thrown from a county bridge over the Cedar river, by reason of the negligent construction of the. same, and by being carelessly allowed to get and remain out of repair.

There was a jury trial, resulting in a verdict and judgment for plaintiff. The county appeals.

*D. W. Poindexter, M. M. Brown,* and *Crane & Rood,* for appellant.

*Foreman & Ryce,* and *Shiras, Van Duzee & Henderson,* for appellee.

MILLER, CH. J.—On the trial, in addition to the testimony of numerous witnesses, the following agreed statement of facts was read in the evidence, viz:

" It is agreed and stipulated in the above cause, that the following facts are admitted in said case, and no evidence need be given to prove the same:

1. The claim on which this suit is based was duly presented to the Board of Supervisors of Mitchell county for allowance, before the suit was instituted, and same was disallowed.

2. That the bridge at which the accident happened is in Mitchell county, Iowa, over the Cedar river, and was built in the year A. D. 1868, and was completed by about the first of August, of said year.

3. That the main structure of the bridge, including the abutments, pier, and superstructure, were built in pursuance of a contract entered into by the county, defendant herein; that said abutments consisted simply of stone masonry work, on which the ends of the superstructure rested, with wing walls to each of said abutments, running back obliquely from the face of each abutment into the bank, and did not comprise any filling within said walls, nor the appreaches, or any part thereof, to said bridge.

4. That the main structure is reached by so-called approaches, built, in part, by timber and plank, and in part by crib work, filled with earth.

5. That the contract price for building said main structure was the sum of $6,400, of which said county appropriated $4,000, and the balance, $2,400, was raised by private subscriptions, and that the question of appropriating more than said sum of $4,000 for building of said bridge, was never submitted to a vote of the people of the county.

6. That said bridge is located on the traveled highway passing from Osage to Watertown, and was in daily use by travelers and the public.

7. That the approaches to said bridge were built about the first of December of said year, A. D. 1868, by private indi-

viduals entirely, and by private subscriptions of money, materials, and labor.

8. That in the years 1871 and 1872, some repairs were made on the north approach to the bridge, by the supervisors of the road district in which the bridge is located; said repairs consisting of placing some new planks in the floor of the approach, and some dirt in the crib work thereof. That Blakesly, the road supervisor for that district in the year 1872, and before the accident, had road funds in his possession sufficient to have repaired and removed the obstructions complained of in the petition, and placed proper railings and barriers on said north approach to said bridge. That said road district in which the bridge was situated, comprises three and one-half sections, a portion of which was well timbered.

9. That in the summer of 1872, said county placed an additional course of plank on the floor of said main structure, which involved an expense of about $200.

10. That at the time of the accident a portion of the end, or corner of one of the plank forming the floor of the bridge, had been split off, leaving a hole in the floor thereof, in the shape of a triangle, which said hole commenced at or near the center of the bridge, and was about six inches wide at the end of the plank, and ran to a point about sixteen inches east of the center of the bridge, and was from — to 20 feet south of the end of the main structure, and leaving on each side thereof sufficient space for the passage of teams.

11. That at the time of the accident, a stone was placed on or over said hole, which stone was from five to seven inches thick, twelve inches broad, and sixteen inches long, and nearly covered said hole, and was of common grey limestone.

12. That said accident occurred on Sunday.  *   *   *  ."
[Signed by the parties.]

I. It is well settled by numerous decisions of this court, that bridges of the character this bridge is shown to be—one requiring an extraordinary expenditure of money in its construction—are properly denominated a "county bridges," to be built and kept in repair by the county authorities. *Wilson & Gustin v. Jefferson*

1. BRIDGES: liability of county: negligence.

*County*, 13 Iowa, 181; *Brown v. Jefferson County*, 16 Ib., 339; *Bell v. Foutch*, 21 Iowa, 119; *McCullom v. Blackhawk County*, Ib., 409; *Soper v. Henry County*, 26 Ib., 264; *Kendall v. Lucas County*, Ib., 395; *Long v. Boone County*, 32 Ib., 181; *Same v. Same*, 36 Ib., 60; *Taylor v. Davis County*, 295, *ante;* and *Davis v. Allamakee County*, 217, *ante.*

It is also settled that the counties of this State are held liable for damages resulting to individuals from the unsafe condition of "county bridges." *Soper v. Henry County, supra.* It being the duty of the county to keep such bridges .in repair, it is liable for damages resulting from defects therein. The duty to construct and keep in repair involves the corresponding liability for injuries resulting either from defective construction or a failure to keep in repair. *Wilson & Gustin v. Jefferson County. supra.* And although it may be the duty of the road supervisor in whose district the bridge is situated, to adjust a " displaced plank, or something of that description, requiring little labor or expense to mend or repair the same," yet the county is not for this reason relieved of its duty to keep county bridges in proper repair, or of the resulting liability for a failure to do so.

The principal point of controversy in this case is, not whether this was a "county bridge," but whether the approaches, as they are called, constituted part of the bridge. These approaches, it was claimed, were constructed without proper railings or barriers on the sides thereof, and over one of these approaches the plaintiff and his wife were thrown by their horse taking fright at the stone on the main bridge. The court left it to the jury to determine under the evidence whether the so-called approaches were properly part of the bridge, and directed them that in determining this question they should consider the object and purpose of a bridge, ánd if they found the approach, so called, was built of timber, plank, and other like materials, and that the same was essential to enable persons to reach the main structure, and thereby pass over the stream; and that without it the main structure would have been incomplete and useless

as a bridge, then the jury would be justified in finding that it was part of the bridge proper, and that the construction and maintenance thereof would fall within the duty and obligation of the county; and that the mere fact that the construction of the approaches was paid for by voluntary subscriptions or contributions, not expended under the direction of others than the agents of the county would not change or alter the liability of the county, in this particular. The converse of this proposition was also stated to the jury in the alternative, leaving them to pass upon the facts involved.

This instruction is in accord with the law and sound common sense, and the verdict of the jury is entirely consistent

3. ——: ——: therewith under the evidence. That this approach
approaches. was a part of the bridge, there can be no reasonable doubt. The main structure, as it is called, being that part which spans the river, would be incomplete as a bridge without the so-called approaches. It would be utterly useless as a bridge, because totally inaccessible without the approaches, which are in fact a prolongation of the bridge, to enable presons traveling on the highway to cross the river on the bridge. Without the approaches, connecting the highway with the main structure of the bridge, the traveling public would be in the situation of the petitioners for a certain road, in a sister state, which was intended to cross, and a portion of which lay on each side of a river. They applied in the same connection for license to establish and operate a ferry across the river, connecting the two portions of the proposed road. The county court, having jurisdiction of both subjects, granted the ferry license, but refused to establish the road.

So, if the county authorities had merely constructed the main structure of the bridge, without any provision or arrangement being made for erecting what is called the approaches, they would have acted as foolishly as did the functionary who established the ferry, but refused the application for the road; and it is very clear that it would have been the duty of the county in constructing the bridge in this case, to also construct the approaches as parts thereof; that the county was relieved of this much of the expense of construct-

ing the bridge by the voluntary contributions of private persons, does not relieve the county from its duties and liabilities in the premises.    Suppose the case had been that the county constructed the approaches, and the main structure over the stream had been constructed by and at the expense of private persons, would such main structure have been any less a county bridge or a part of one than if the whole cost had been borne by the county?   Certainly not.

· The case is simply this: that the bridge, including the approaches, constitutes a county bridge, which it was the duty of the county to erect and maintain; and that in its erection certain private persons voluntarily contributed to the labor and expense of such erection.   The law did not forbid these persons from thus assisting the county in the performance of an important duty, nor did it create or impose upon them any obligation to do so, nor any obligation to maintain or assist in maintaining the bridge after its erection.

The approaches were not built by the road supervisor nor under his direction.   The work was such, costing such an amount of money in its construction, that it did not fall within the duties of the road supervisor.   In other words, it required an extraordinary expenditure of money, such as the road district, as such, could not meet.   And it is manifest that the county authorities understood that the approaches and the main structure constituted what was proper and necessary as a bridge across the river at this point, and that a part of the burden of doing this work was taken from the shoulders of the county by the voluntary action of persons directly interested in procuring the erection of the bridge.   They even contributed more than one-third of the expense of the main structure across the river.   As we have already remarked, all this did not change the character of the bridge, the duty, or the liability of the county.

II.   Appellant assigns as error the refusal of the court to give the second, third and tenth instructions asked.   They are as follows:

" 2.   If you find from the evidence that the said stone was placed upon said bridge temporarily for the purpose of cover-

ing a hole in the floor thereof, which might interfere with travel; and that the said stone did serve such purpose, although placed there by private individuals, there still being room for the passage of teams at the side thereof, the county would not be liable for injuries resulting from plaintiff's horse taking fright at said stone.

"3. An object in a highway with which a traveler does not come in contact or collision, and which is not shown to have been an actual incumbrance or obstruction in the way of travel, is not to be deemed a defect in the highway, for the sole reason that it is of a nature to cause a horse to take fright.

"10. If you find from the evidence in this case, that the stone being on the main floor of the bridge, and which it is claimed caused plaintiff's horse to take fright, was so situated as to allow teams to pass over said bridge without coming in contact or collision therewith, and was not an actual incumbrance or obstruction in the way of travel, then the simple fact that said stone was of such a nature as to frighten horses, would not render its existence there a defect or want of repair in said bridge, nor would the county be chargeable with negligence in not removing the same."

It may be conceded that the fact of a stone lying on the bridge, and there being sufficient room for travel on each side of such stone, the county would not be liable for injuries resulting alone from the plaintiff's horse taking fright at the stone—(on this we give no opinion); but it is not claimed by the plaintiff that the injury resulted alone from his horse taking fright at the stone lying on the bridge, but also that there were no railings or barriers on the sides of the bridge, as there should have been to protect him and prevent the injury. In other words, if there had been proper barriers or railings, the horse could not probably have thrown plaintiff off the bridge, notwithstanding his fright at the stone, and that the negligence consisted mainly in the failure of the defendant to erect the proper railings or barriers on the sides of the bridge to prevent such accidents. The instructions were properly refused, for the reason that they did not go far enough and include the real facts in issue.

4. INSTRUC- TIONS: should be based on facts.

The seventh and eighth paragraphs of the charge cover this ground correctly. The jury were there charged that if they found in the floor of the bridge a hole or holes, covered with a stone or stones placed thereon; that if these objects were of such a character as would be likely to frighten horses of ordinary gentleness, then they would be justified in finding that they constituted defects or obstructions in the bridge tending to prevent its safe use; that if they further found that these defects or obstructions were known to the defendant, they would be justified in finding that the defendant was guilty of negligence in this particular, and if they so found and *that the defendant was guilty of negligence in not keeping the approaches* to the bridge in safe condition for ordinary travel and use, then they should find for the plaintiff, if such defects produced the accident complained of by plaintiff, and he was himself not guilty of any negligence contributing to his injury.

What has already been said disposes of the grounds of complaint at the refusal to give the fourteenth and fifteenth instructions asked by defendant, besides this alleged error is not urged in argument. No ground of error is stated or reason given why it was error to refuse the instructions specified.

It is next urged that the court erred in admitting the testimony of witnesses to prove that the obstructions on the bridge were of such a character as would be likely to frighten horses of ordinary gentleness. The witnesses stated that they had seen and knew the character of the obstructions, their size and appearance; that the witnesses, each, were accustomed to handling and driving horses, and knew their habits, etc., and that these obstructions were of such a character as would be likely to frighten horses of ordinary gentleness.

5. EVIDENCE: experts.

We think this evidence was properly admitted. The nature, habits and peculiarities of horses are not known to all men. Persons who are in the habit of handling and driving horses, from this experience learn their habits, nature, etc., and are therefore better able to state the probable conduct of a horse under a given state of circumstances, in which they

have in their experience witnessed their conduct under similar circumstances, than persons having no experience whatever with horses. So in respect to the age of a horse, experienced persons are able to tell from an examination of the mouth and other signs, how old the animal is; while inexperienced persons would be utterly unable to even approximate to the age of the animal. We are of opinion, therefore, that the case does not fall within the rule announced in *Muldowney v. The Ill. Cen. R'y Co.*, 36 Iowa, 462, and that there was no error in the admission of this evidence.

Finding no error in the record, the judgment will be affirmed.

AFFIRMED.