MARY E. MILLER V. BOONE COUNTY, Appellant.

Elements of Negligence: COUNTY. In the case of a horse backing off an approach to a bridge, where there was a railing or barrier, it is proper to instruct that, if ordinary care required the approach

to be guarded by a railing, and an ordinary and suitable railing would have prevented the injury, the county was liable. *McClain v. City,* 83 Iowa, 235, *distinguished.*

**Verdict Not Excessive.** A verdict of six thousand five hundred and sixty-five dollars for injuries permanently and completely disabling, and leaving in a condition of suffering, a woman forty-four years of age, who previously did all her housework, and earned in addition six to twelve dollars per week, is not excessive.

**Opinion Evidence.** On an issue as to whether an accident happened on an approach to a bridge or on the highway before the approach was reached, a witness may not state whether or not the place where plaintiff's team backed off into a ravine was the part of the approach or of the highway, as this is a question for a jury to settle from descriptions of the location.

**Instructions Construed.** Where personal injuries are permanent, an instruction to allow for bodily and mental suffering which plaintiff may reasonably be expected to undergo in the future, refers to plaintiff's condition as shown by the evidence, and does not authorize conjecture. *Fry v. R'y,* 45 Iowa, 416, *distinguished.*

**Notice: NEEDLESS CHARGE.** Where knowledge of a defective approach is not controverted, there need be no instruction on what notice is necessary to base liability against the county.

**Definitions in Charge.** An instruction need not define such words as *"immediate"* or *"proximate"* cause of the injury.

**Misconduct of Counsel.** While reference should not be made to the result of a former trial, judgment will not be reversed because counsel stated to the jury, in argument, that the case had been tried before, that the verdict was in the record, and requested them to examine it upon retiring.

*Appeal from Hamilton District Court.*—Hon. S. M. Weaver, Judge.

Thursday, May 23, 1895.

Action at law to recover damages for a personal injury alleged to have been sustained by reason of a defective approach to a county bridge. There was a trial by jury. Verdict and judgment for the plaintiff. Defendant appeals.—*Affirmed.*

*J. L. Kamrar, J. R. Whitaker,* and *Gatch, Connor & Weaver* for appellant.

*J. M. Goodson, Westley Martin,* and *J. F. Martin* for appellee.

Rothrock, J.—I.   On the evening of December 8, 1888, the plaintiff, her son, aged about nineteen years, her daughter, aged thirteen years, and a young lady, left the city of Boone, to go to their home in the country.   They were traveling in a buggy drawn by one horse, and as they approached a county bridge they met a team and wagon, near the bridge, and the horse which was driven by the plaintiff's son backed upon the elevated roadway or approach to the bridge so that the buggy, horse, and the plaintiff were precipitated down a steep bank, a distance of ten or twelve feet, and she received the injuries for which she seeks to recover damages.   The trial in the court below was had nearly three years after the injury, and the plaintiff testified as a witness in regard to her injuries as follows: "Had both arms broken.   Nose was broken. That lip was turned down that way.   My face was numb.   That wrist was broken here, and left my wrist crooked.   The fingers of my right hand are a little stiff.   Wrists were broken about two inches above joints.   My right limb was injured.   Have no use of my hip at all, and I suffered more from my breast than I do anything else.   I rested good enough nights before, but now I do not rest at all.   Can't lay down good.   Can't lay down in bed at all.   Have cough most of the time.   Have a kind of a bad feeling in my chest.   Don't know that it is a pain.   Did not have it before injury.   Then I could do as much work as any woman.   Did my own work.   Used to wash, keep boarders, and run a knitting machine.   Earned six dollars or seven dollars per week washing, and two dollars a day on knitting machine, and at same time kept boarders.   Did not keep boarders and do washing at

same time.  Now I can't do anything at all, nor have from the time of the injury.  Cannot dress myself entirely.  Cannot put on my shoes.  Cannot walk without crutches.  Cannot step up on anything.  Cannot stand without leaning on something.  Have no use of my right limb at all."  There is no real controversy as to the extent of the injuries.  It is true that the plaintiff was slightly lame before the accident.  It appears that early in life she was injured in one of her ankles, from which she never entirely recovered.  She was about forty-four years old when she received the injury for which she seeks to recover.

A great many objections are made to rulings of the court pending the trial, and to instructions given to the jury.  Those which we think are material will be considered after we have disposed of two questions which arise upon the evidence.  The first proposition we will consider is whether the verdict was excessive.  It was for the sum of six thousand five hundred and sixty-five dollars.  There is one fact disclosed in evidence which, in a certain degree, tends to show that the plaintiff was not properly treated for the injury to her hip, but the general course of the surgical treatment does not appear to be objected to or questioned.  In other words, there is no evidence of surgical malpractice; and the court, in the instructions to the jury, makes no reference to that subject.  It is our judgment that we ought not to interfere with the verdict because it is excessive.  The evidence which we have recited fully justifies the recovery.  No evidence was introduced to the effect that plaintiff might, in time, recover from her injuries; and there was really no evidence introduced to show that the injuries are permanent.  The lapse of time between the accident and the trial and the condition of the

plaintiff at the trial left no room for doubt upon that question.

II.    As we go through this record, we are impressed that the only question of doubt in the case is whether the verdict has sufficient support in the evidence.    The pivotal question of fact is whether the injury was proximately caused by an insufficient and defective approach to the bridge.    It was contended in the court below, and is insisted upon here, that the evidence shows the place of the accident was not on the approach to the bridge, but that it was on the public highway, and beyond the approach.    The proposition in behalf of the plaintiff is that it was on the approach.    This court has frequently held that the approaches to a county bridge are a part of the bridge, and a county is liable, in a proper case, for negligence in the construction of the approach.    *Albee v. Floyd Co.*, 46 Iowa, 178; *Nims v. Boone Co.*, 66 Iowa, 272; *Yordy v. Marshall County*, 80 Iowa, 407.    No question is made in this appeal as to the instructions of the court upon this feature of the case.    As we have said, the contention of appellant is that the evidence shows that the injury was not caused by a defective approach, but in the public road leading to the approach.    It would be a difficult undertaking to set out the facts as to the precise location and extent of what was properly the approach to the bridge, so that the reader would understand the situation.    It is enough to say that the bridge was constructed not over any well-defined stream of water.  It is a ravine called "Godwin Hollow." On the east of the bridge, where the accident happened, there is a hill or elevation the top of which is much above the level of the bridge.    This hill is broken by a ravine running through it to the east.    The approach to the bridge is raised up to a level with the top of the bridge, and runs back east, and strikes the hill on

the side of the ravine running east. The question of
fact is, did the fill or raised approach run back beyond
where the accident occurred, or was it at or beyond
the cut or excavation in the hill? Several of the plaint-
iff's witnesses testified that at the place where the
plaintiff was thrown into the side of the ravine there
was a fill of from two and one-half to five feet. On the
other hand, a number of witnesses in behalf of defend-
ant testified that it was beyond the fill, and in the cut
on the hillside. There is an irreconcilable conflict in the
evidence on this issue of fact, which it was the peculiar
province of a jury to determine, and we do not think
the district court would have been warranted in inter-
fering with the finding. We will not review the testi-
mony of the witnesses.

III. We now come to consider a question made
upon a ruling of the court on the exclusion of evidence.
The defendant called two witnesses, who testified that
they had known the place and surroundings where the
bridge was located for many years. They were then
asked to state whether or not the place where the plaint-
iff was backed off into the ravine was a part of the
approach to the bridge or a part of the highway lead-
ing to the bridge. An objection to this line of
inquiry was sustained. The ruling was clearly
correct. That question was for the jury, and a
witness ought not to be allowed to find the fact for the
jury. It was not a case where the witness could not
describe the location so that the jury could draw the
correct conclusion. The proper inquiry to make of the
witness was whether the place was in a cut or on a fill.

IV. A great many objections are made to the
instructions given by the court to the jury. It is said
that the court omitted to charge the jury that the county
would not be liable unless it had actual notice of the
defective approach, or that the defect had existed for

such a length of time that the county officers might have, by reasonable diligence, known of the defect. There was no occasion for any such instruction. The evidence shows that there was really no dispute that the board of supervisors knew the condition of the approach to the bridge before the accident. Indeed, the defect was really one of original construction, in failing to properly guard the approach by a barrier or railing at the place where the plaintiff was thrown down the bank. It is true, there was a railing from the end of the bridge some distance, but the accident occurred east of the end of the barrier. And there was evidence that the embankment had been washed down by rain on the sides, so that it was not so wide as when first constructed; but, as we understand the testimony of one of the county supervisors, who at one time repaired the bridge, the road was in as good shape when the accident occurred as it was when the bridge was repaired.

V. The court instructed the jury that, if the defendant was liable, the plaintiff was entitled to recover for "bodily and mental suffering, if any, which she has heretofore undergone, or may reasonably be expected to undergo in the future." It is urged that this instruction is error in so far as it authorizes damages for future pain and suffering, because it is not qualified by the thought that damages for future suffering should be based upon the evidence. Such a qualification is necessary where there is contention as to the permanency of the injury. But in this case the injury is shown beyond question to be permanent, and the direction to award such damages as may reasonably be expected to arise in the future refers to the condition of the plaintiff as shown by the evidence. The instruction is not vulnerable to the objection made to a somewhat similar one in *Fry v. Railroad Co.*, 45

Iowa, 416, where the jury were directed that damages might be assessed for "all past, present, or future physical suffering or anguish which is, has been; or may be caused by said injury." That was held to be too broad, because it authorized the jury to enter the domain of conjecture. In the case at bar the injuries were permanent, and, with that fact established, there was no occasion to make the instruction any more specific than it was.

VI. Objection is made because the court instructed the jury that to authorize a verdict for the plaintiff they must find from the evidence that the negligence of the defendant was the "immediate or proximate cause of the injury to the plaintiff." The fault found with the instruction is that the court did not define the words "immediate" and "proximate." We do not think this was necessary. These words have no such technical, legal meaning as to require definition to a jury.

VII. It is claimed in a supplemental argument for appellant that the court erred in instructing the jury that if they found that ordinary care required the approach where the accident happened to be guarded by a railing, and that an ordinary and suitable railing would have prevented the injury, then the county was liable. It is urged that this instruction is contrary to the rule announced in *McClain v. Town of Garden Grove*, 83 Iowa, 235. We will not take the space here to say more than that the facts of the two cases are so unlike that the case at bar is in no wise to be controlled by that case. The rule announced by the court in this case is surely correct when applied to a horse backing a buggy off an approach at a point where there is no railing or barrier of any kind.

VIII. Other objections are made to the charge to the jury, which we do not think it necessary to sepa-

rately consider. To state them, it appears to us, would be sufficient to show that they are not well taken.. Indeed, we think the charge to the jury in general and particular was singularly clear, fair, and unobjectionable and couched in language which the jury could not fail to understand.

It is charged that counsel for the plaintiff was guilty of misconduct in the closing argument to the jury. One specification is that the fact was mentioned that the case had once before been tried to a jury, and that the verdict was part of the records of the case; and the jury were requested to examine the same when they went to the jury room. While it is true no reference should be made to the result of a former trial, yet we do not think the misconduct was such as to require a reversal of the judgment. It is unnecessary to state the other alleged misconduct. It is no cause for a reversal of the case.

We have disposed of every material question in the record, and we unite in the conclusion that the judgment should be *affirmed*.