ADDIE M. EGINOIRE, Administratrix, v. UNION COUNTY, Iowa, Appellant.

**Action for Injuries:**      EVIDENCE. In an action against a county for injuries sustained by a horse becoming frightened at mortar boxes and stone used in the repair of a county bridge by a private contractor, evidence as to such stone, mortar boxes, etc., was properly admitted as showing the condition of things at the bridge, on the issue of the county's negligent maintainance thereof.

INJURY BY SEVERAL CAUSES: *Instructions.* In an action against a county for the death of a child, caused by a horse overturning a vehicle, on becoming frightened at materials for repairs at a bridge by an independent contractor, an instruction, that if the horse took fright at such materials, that fact might be considered, in connection with the issue as to the negligent construction or repair of the bridge, in determining whether the county was negligent, was not erroneous, when taken in connection with another instruction, that if the injury was caused by reason of the act of the contractor alone the plaintiff could not recover against the county.

SAME. Where plaintiff's daughter was fatally injured by reason of plaintiff's horse becoming frightened while crossing a defective bridge in process of reconstruction, an instruction that, if the horse took fright at the materials of the contractor about the bridge, that fact might be considered, in connecion with the issue as to the county's negligent repair of the bridge, was not erroneous in itself, since such fact would not relieve the county from its negligence in failing to provide suitable and safe passage over the bridge.

DAMAGES: *Presumption as to future avocation.* In an action for the negligent killing of a girl 8 years of age, evidence that her stepfather was a school teacher, and as to the salary paid to women teachers in the township where deceased resided, introduced for the purpose of proving damages, was

not objectionable on the ground, that decedent's mother being a housewife, the presumption was that the daughter would follow her mother's avocation, and not that of her father, since, in view of contemporaneous history, the majority of school teachers are women, and there was a slight probability that deceased would have chosen that occupation.

NOMINAL DAMAGES.   In an action for damages for the negligent. death of an exceptionally bright girl 8 years of age, an instruction that plaintiff. could not recover more than nominal damages for the death of a female child was properly refused..

VERDICT:   *Not excessive.*   Where plaintiff's intestate, a girl of 8 years of age, exceptionally bright for her years, was killed in an accident by reason of a defective county bridge, a verdict against the county for $3,500, which the court reduced to $2,500, was not excessive.

WHAT IS PART OF BRIDGE:   *When jury question.*   Where the approach of a county bridge had been washed out, and the road supervisor had erected an approach over the washed out portion, of stringers and planking, which was not provided with any side rail, as provided for the bridge, by reason of which plaintiff's daughter was fatally injured by plaintiff's horse tipping the wagon over the side of such approach, the question whether the approach was a part of the bridge was a question for the jury.

*Appeal from Adams District Court.*—HON. H. M. TOWNER,. Judge.

SATURDAY, DECEMBER 22, 1900.

ACTION to recover damages for the death of a girl 8 years of age. There was a trial to a jury, and verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*James G. Bull,* County Attorney, and *Maxwell & Winter* for appellant.

*Sullivan & Sullivan* for appellee.

SHERWIN, J.—The accident upon which this action is founded occurred at a bridge which was built and main-

tained by Union county. At the time it was built it met the highway at both ends without approaches. About a year before the accident high water had washed away five or six feet in width and seven or eight feet deep of the roadway at the south end of the bridge. This washout was covered by the road supervisor of the township with stringers and plank, so that the bridge was again made accessible. There were railings on each side of the main bridge, but none on either end of this approach. At the time in question, the plaintiff, with her husband, and her daughter, the deceased, were riding along the highway on which this bridge was situated, in a single-seated buggy drawn by one horse. They drove onto the bridge at the south end, and when a part of the way across it the horse became frightened at some object not disclosed definitely by the evidence, and stopped, and backed off of the approach covering the washout, and fell, with the buggy and its occupants, to the ground below, and the plaintiff's daughter received injuries from which she soon died. Some time before this the county had let the contract for a stone culvert, to be put in in place of this bridge, to Mr. Noble. He had worked thereon at different intervals during the year before the accident happened, and had hauled and left stone near the bridge at different times, and hauled a load and left it at the north end of the bridge the day of the accident. He had also, for nearly a year, as the evidence tends to show, kept one or more white mortar boxes around there. The court permitted this to be shown by the plaintiff, and instructed the jury that, if the horse "took fright at said alleged obstructions while on the bridge, the same may be considered in connection with the issue as to the negligent construction or repair of said bridge."

The admission of this evidence and the instruction are complained of. There was evidence tending, at least, to show that the county had actual knowledge of the manner in which Mr. Noble was doing his work there, and of the material

and mortar boxes he permitted to remain near the ends of the bridge. It was conclusively shown that Mr. Noble was an independent contractor, and the court so instructed the jury; and further instructed as follows: "If the jury find that said injury and death of which plaintiff complains was caused alone by reason of said acts of said Noble in the negligent performance of his work, then the plaintiff is not entitled to recover as against Union county, and you should find for the defendant." These two paragraphs of the charge, read together, leave no doubt as to the meaning of the one complained of. It simply authorized the jury to consider the condition of things at the bridge in determining the question of whether the defendant was negligent in not putting railings on the approach in question. It, in our judgment, will bear no other construction, and it was certainly competent to show all the conditions, present or past, for the information of the jury on the vital question in the case. The instruction is right, and the evidence was properly admitted.

Nor is the closing paragraph of instruction 4, which we have set out above, when taken alone, or in connection with No. 5, which we also quote, open to the criticism made. Concede that the horse did become frightened at the rock or mortar boxes, and that they were the cause of its backing, still the defendant would not be excused for its negligence in failing to protect the approach to the bridge. *Gould v. Schermer,* 101 Iowa, 582; *Langhammer v. City of Manchester,* 99 Iowa, 295; *Walrod v. Webster County,* 110 Iowa, 349.

The ninth and tenth paragraphs of the court's charge relate to the question as to whether the approach was a part of the bridge. Objection is made to the following language used therein: "If, however, you find it built of timber, plank, and other material, and that the same was essential to enable persons to reach the main structure, and thereby pass over the stream, and that without it the main structure would have been incomplete and

useless as a bridge, then the jury would be justified in finding it a part of the bridge." "And merely because it was. not originally constructed as a part would not determine it as no part of such bridge; it may at any time become necessary for the county to build, or cause to be built, an approach which may be a part of said bridge." "Notwithstanding the matters herein referred to, the essential nature and character of the approach is to determine whether or not it was a part of said bridge." It may be, and probably is, true that, under these instructions and the evidence before it, the jury could not do otherwise than find as it did; but the instructions announced a rule which has often been approved by this court, and the fact that they exactly fitted the evidence in the case affords no just cause of complaint. *Moreland v. Mitchell County,* 40 Iowa, 394; *Albee v. Floyd County,* 46 Iowa, 178; *Robey v. Appanoose County,* 63 Iowa, 113. It was a question for the jury to determine from the facts, under proper instructions (*Newcomb v. Montgomery County,* 79 Iowa, 487); and the charge of the court below covering this question was full and complete.

As has been before stated, the deceased was a girl 8 years of age. The record shows her to have been exceptionally bright for her years. Her stepfather, plaintiff's husband, was a school teacher at the time of her death, and had been so engaged for a number of years prior thereto. The plaintiff was permitted to show the average salary paid female school teachers in the township where she then lived, and the court gave this instruction on the subject: "The court has allowed the fact to be shown that the stepfather of the deceased was a school teacher by profession, and what are the usual wages of female school teachers in the locality where deceased resided. There is. some slight presumption that the son will follow the avocation of his father, or that a daughter might follow the avocation of her mother, if she had an independent avocation. In this case the mother had, at the time complained of, no

independent avocation, and the deceased's father was dead.
The presumption would be very small as to what business or
avocation might have been followed by the deceased had
she lived.   The evidence introduced has been allowed to go
to you more for the purpose of showing the position in soci-
ety and the relative status of the family in which she lived,
rather than to support any presumption." It is contended
that the admission of this testimony and the giving of this
instruction constitute reversible error.   It is not entirely
clear to us that the court intended to leave this question for
the jury's consideration in fixing the amount of damages the
estate should recover, but we shall treat the instruction as
having that effect, and discuss the evidence and instruction
together.   In *Walters v. Railroad Co.*, 41 Iowa, 71, recovery
was sought for the death of a male child a little less than
2 years old.   Evidence went to the jury as to the father's
occupation, and as to the usual compensation paid for such
work as he did.   The court also instructed that, in consider-
ing the amount the estate would be entitled to recover, the
jury might consider the father's occupation, "as indicating
the general nature of the pursuits which deceased would have
probably followed had he lived." The admission of this tes-
timony and the giving of this instruction, were held not to
be prejudicial error.

Nor do we think the evidence and instruction before us
in this case can be said to be prejudicial.   We are, on the
other hand, inclined to think the evidence was competent to
go to the jury for what it was worth.   It is true, un-
doubtedly, that all children, when grown, do not fol-
low the pursuit engaged in by either parent; but the
instances are very many where they do, and this is as well
within the observation and common knowledge of jurors as
other everyday facts.   It is said, however, that the daughter
is more liable to follow the avocation of the mother, and the
mother in this instance being a housewife affords no criterion
for the jury to act on.   In this particular case we do not be-

lieve this is true; for it is a fact within the knowledge of all that a large majority of the teachers in our public schools throughout the state are young women. It is a position that the bright, intelligent, and studious girl looks forward to with eagerness, as opening a way whereby she may earn an independent living. There was a time when marriage was considered the only future possible for young women, but that time has passed, and they now enter into sharp competition with their brothers for the good positions open to the worker.

And what we here say applies also to the objection made to the general instruction on the question of damages, wherein it is claimed that no more than a nominal sum should have been allowed. It cannot be true, and, indeed, defendant does not contend for such a general rule, that no more than nominal damages may be recovered for the death of a female child. Such a rule would be abhorrent to all civilized ideas of right and justice. It is not an easy matter always to correctly estimate the probable earnings and savings, even of those whose life work has already been chosen, and it is still more difficult to determine the question where it relates to an infant. The most that can be done is to place before the jury such facts as shall support proper and legitimate inferences, and leave them to a determination of the matter, with the assistance of the knowledge and observation common to all alike. We believe this was done in this case under clear, concise, and impartial instructions.

The verdict was for $3,500. This the court reduced to $2,500, and defendant claims this amount is excessive. Without reviewing the cases wherein this question has been discussed, we are content to say that we think the verdict in all other respects fully supported by the evidence, and believe no injustice will be done the defendant by affirming the judgment as to amount.—Affirmed.