F. M. PERSON, Appellant, v. POLK COUNTY, Appellee.

**BRIDGES:** "Approach" as Jury Question. Principle recognized that
1    ordinarily the jury must say whether a specified part of a highway
constitutes the *approach* to a bridge.

**BRIDGES:** Proximate Cause of Injury. Evidence reviewed, and held
2    to show that the proximate cause of an injury was the temporary
loss of control by the driver of his automobile.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

DECEMBER 13, 1921.

REHEARING DENIED APRIL 8, 1922.

ACTION to recover damages alleged to have been caused by the negligence of defendant in maintaining a defective and dangerous approach to a county bridge. The court, at the conclusion of plaintiff's testimony, directed a verdict in favor of the defendant, and plaintiff appeals.—*Affirmed.*

*Brockett, Strauss & Blake,* for appellant.

*George A. Wilson,* for appellee.

STEVENS, J.—This case appears to have been abandoned by appellee, after the filing of an amended abstract. The case, in some respects, is a very difficult one, and counsel for appellee should under no circumstances have failed or neglected to file an argument. The time of this court is all taken up in the consideration and disposition of causes properly prepared for sub-

mission, and it is an imposition for counsel to submit cases without argument, trusting to the court to find grounds for affirmance, and to look up the authorities to sustain the action of the court below.

The bridge in question, which is located on a north and south highway in Camp Township, Polk County, Iowa, spans a small creek or ravine. The floor of the bridge is 16 feet in width, constructed with banisters on either side, and at the north end on the west side and on both sides at the south end with wings. The wings are constructed out of planks nailed to piling driven in the ground. The space between the wings is filled with earth, although not to the surface of the roadway, for the full width between them at the south end of the bridge. These wings are about 15 feet in length. The creek spanned by the bridge has two branches, one flowing from the northwest and the other from the southwest, and uniting at the west side of the bridge. The southwest branch enters the highway two or three rods south of the bridge, and the action of the water has washed away its east bank, so that it has encroached slightly upon the road grade, which counsel for appellant designates as the approach to the bridge.

We have before us the blue print of an engineer who testified for plaintiff, which shows the location of the bridge, creeks, road grade, and various important elevations and cross-sections of the highway. It appears from this plat and profile that the width of the road grade at the south end of the bridge between the wings is 16.6 feet; that, commencing 16 feet south thereof, the top of the grade is 10 feet wide, for a distance of approximately 85 feet. The elevation of the surface of the road or grade above the general surface of the ground, so far as shown by the plat of appellant's engineer, is as follows: On the west side, at the south end of the bridge, 4.8 feet; 15 feet south, 1.8 feet; 27 feet south, 1.7 feet; 50 feet south, 4.25 feet; and 100 feet, .5 of a foot. The elevation of the ground on the east side of the grade is generally slightly lower than on the west side. A cross-section of the highway at the south end of the bridge shows the elevation of the grade above the bottom of the creek to be 8.8 feet; at a point 15 feet south, 9.4; and at a point 27 feet south, 8.7 feet.

The negligence charged in plaintiff's petition against the defendant county is that the roadway and approach to the bridge between the wings on the south side are too narrow for safe travel by automobiles and similar vehicles; failure to erect a guard rail or other device at the place where the accident occurred, to protect vehicles and prevent them from falling off the grade; and failure to cause some suitable sign or warning to be erected and maintained in a conspicuous place at the point in question, to give notice to the traveling public of the existence and presence of the dangerous condition of the south approach to the bridge.

Photographs of the bridge and grade, which numerous witnesses admitted fairly represented the situation, were before the court upon the trial below; but these have not been certified to this court, and are not before us. We shall, however, assume that the plat and profile of the engineer, which doubtless was made from careful measurements and data, is substantially correct. The grade or roadway north of the bridge is about the same width for 80 feet as it is south of the bridge. The bridge is approached from the north down an incline, the per cent of which is not shown. According to the testimony of the witnesses and of plaintiff himself, he approached the bridge from the north at a speed of from 15 to 20 miles per hour. The surface of the grade immediately north of the bridge had apparently been softened by thawing, and when the automobile passed over that place in the road, the front end was thrown toward the east, and appellant, in attempting to bring the car in line with the roadway, traveled a zigzag course, first to the east, then to the west, again to the east, then to the west,—the front wheel on the right side of the grade striking and passing over the edge at a point about 11 feet south of the end of the bridge, and tipping over into the ditch when the front end was approximately 27 feet south of the grade. The point where the right wheels of the car went over the grade is between the wings, the roadway being at that place about 11 feet wide. Describing the course of the car, the appellant testified as follows:

"When I started down the hill, I turned the switch off and let the car run of its own accord, but near the foot of the hill I pressed the switch on, and put my foot on the feed. You have

got to give gas. The clutch was in, going down the hill, but turned the switch off which makes the spark, and when I got to the foot of the hill, I turned it on, and gave it a little gas. From that point until I struck the bridge, the speed, in my judgment, was 15 to 20 miles an hour. I have been driving on the country roads, and acquired some knowledge about how to judge. I had a speedometer, indicating the rate, but did not look at it. I have watched it so that I could pretty near tell. When I felt the front end of my car toward the east, I turned the steering wheel to the right, and then turned it to the left, to get it into the road. It turned itself to the left, and I had to turn to right, and then to the left. I think I was about half way—maybe a little more than that—on the bridge when I turned it and started back west; then I turned it to the left, to get back in the road. I wanted to keep myself lined up straight in the road ahead.''

One of the witnesses testified that he saw appellant just as he was about to go upon the bridge, and remarked to his companion, "See him go,"—evidently referring to the zigzag movement of the car. His companion testified to hearing the remark in substance, but said that he did not see appellant until just as the car tipped over into the ditch.

One of the contentions of counsel for the defendant upon the trial in the court below apparently was that the place where the accident occurred was a part of the roadway, and not of the approach to the bridge. Counsel for appellant

1. BRIDGES: "approach" as jury question.

have directed much of their argument in this court to that question. Generally, it is a question of fact for the jury to say whether the place where the accident occurred is or is not a part of the approach to the bridge. *Moreland v. Mitchell County*, 40 Iowa 394; *Albee v. Floyd County*, 46 Iowa 177; *Nims v. Boone County*, 66 Iowa 272; *Newcomb v. Montgomery County*, 79 Iowa 487; *Miller v. Boone County*, 95 Iowa 5; *Roby v. Appanoose County*, 63 Iowa 113; *Eginoire v. Union County*, 112 Iowa 558; *Hubbard v. Montgomery County*, 140 Iowa 520; *Sewing v. Harrison County*, 156 Iowa 229; *McGee v. Jones County*, 161 Iowa 296; *Shope v. City of Des Moines*, 188 Iowa 1141. An approach to a bridge, as that term is used in this connection, is that part of the roadway which is essential to make the bridge accessible and convenient for

public use. *Shope v. City of Des Moines,* supra'; *City of Chicago v. Pittsburgh, Ft. W. & C. R. Co.,* 247 Ill. 319 (93 N. E. 307); *State v. Illinois Cent. R. Co.,* 246 Ill. 188 (92 N. E. 814, at 852). Concerning approaches, their extent, etc., we said, in *Shope v. City of Des Moines:*

"In this country, neither the extent of the approach nor the distance from the ends of the main structure within which the county shall repair, has been defined. No arbitrary rule exists, and it is quite generally held that the limit is the line indicating the end of the approach on the highway of which it forms a part."

If the proximate cause of the accident was a defect in the road grade, and not in the approach to the bridge, as that term is understood in this connection, the defendant would not be liable to appellant for damages. *Snethen v. Harrison County,* 172 Iowa 81. As heretofore stated, the floor of the bridge at the southwest corner is 4.8 feet above the general or natural surface of the ground at that point. This being true, in the absence of a grade in the highway at the time the bridge was built, of sufficient height to enable travel to pass over it without further filling, the construction of an approach must have been absolutely necessary. If, however, the highway was already graded, and the elevation of the bridge, as originally constructed, so adjusted as to correspond with the elevation of the grade already existing, possibly a different question might arise. Upon this point, we express no opinion. One witness testified that he supposed the grade in the highway was constructed as an approach to the bridge. The evidence, however, shows the elevation of the natural surface of the ground 50 feet south of the bridge to be considerably lower than the elevation at two points farther north, but south of the bridge.

We shall not undertake to determine whether the place where the car ran off the grade and finally fell over into the ditch was a part of the road grade or of the approach to the bridge. It seems to us that the other facts in the case are decisive and controlling. It will be noticed that the grade south of the bridge is not less than 10 feet in width at any point for 100 feet, and of substantially the same width for 80 feet north of the bridge;

2. BRIDGES: proximate cause of injury.

that the front right wheel of the car passed over the top of the grade 11 feet south of the bridge between the wings, and where the grade was about 11 feet wide. The only defect complained ·of is the narrowness of the grade, and the encroachment of the creek upon the west side, creating an abrupt and precipitous fall from the top of the grade to the bottom of the creek. This, of course, increased the danger of injury to one going over the grade. The surface of the roadway was solid, level, and in good condition for travel. There were no obstructions of any kind in it. Two or three witnesses testified that the used portion of the highway showed that vehicles turned slightly toward the east after crossing the bridge, so as to avoid the place where the grade had been washed away, and that in some places the west track came within a foot or two of the edge of the grade; but, as fully appears, the width of the surface of the grade was not diminished at this point.

Whether the county was negligent in permitting the roadway to continue in this condition, which the evidence shows had existed for many years, we do not decide. The evidence without conflict shows that the accident occurred in broad daylight. When the automobile came near to the north end of the bridge, it apparently struck a soft or wet place in the road, and was thrown toward the east side of the bridge, and followed a zigzag course from that point to where the right front wheel went off the grade on the west side south of the bridge.

It is perfectly apparent from the evidence that appellant temporarily lost partial control of the car, and that the accident occurred while he was attempting to bring it in line with the highway. Had the grade been a few feet wider on the south side of the bridge, the accident might have been avoided; but, under the facts and circumstances shown, we cannot hold that there was any negligence on the part of the defendant that was the proximate cause of appellant's injuries. Had he not temporarily lost partial control of the car, at a time when it was traveling at a rate of speed of possibly 20 miles per hour, the accident would not have occurred. Appellee was clearly not to blame for the condition of the road north of the bridge, and no such claim is asserted by appellant. It was at this point that the car began its zigzag course across the bridge. Appellant was not thereafter

able to right the car, and the accident, with the serious consequences shown by the evidence, resulted.

It is our conclusion that the ruling of the court directing the jury to return a verdict for the defendant must be sustained. The judgment below is, therefore,—*Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.

DE GRAFF, J., takes no part.