CHRISTINA STRAND, Appellee, v. DAVID G. BLEAKLEY, Administrator, Appellant.

No. 41245.

JUNE 24, 1932.

Crissman, Linville & Bleakley, for appellant.

Donnelly, Lynch, Anderson & Lynch, for appellee.

WAGNER, C. J.—Briefly summarized, the material facts of this case are as follows: Christina Strand arrived in this country from Sweden in the fall of 1903, and shortly after her arrival entered the home of Ben W. Long, where she remained, with the ex-

ception of two short intervals spent in Sweden, until his death on October 25th, 1930. The wife of decedent died in July, 1904, and he thereafter remained a widower. At the time of the death of his wife, his family consisted of himself, his daughters, Mary and Ellen,—the former being eight years of age and the latter four,—and a son, John, aged six. At the time of his death, the decedent left surviving him two daughters and probably the son, John, who absented himself from the family and has not been heard from since 1922.

Plaintiff's claim is founded upon services rendered to the decedent. In her claim, as amended, she alleges, in substance, as follows: That in the month of January, 1904, at the oral request of the said Ben W. Long she began working for him in his home, doing the house work, such as cooking, laundry work and caring for the household, and that in the month of July, 1904, the wife of the said Ben W. Long died, and at the oral request of the said Ben W. Long she continued to work for him in his home, caring for the household and doing all of the household work, doing the cooking for the family, the laundry work and assisting in doing the chores on the farm, the family of the said Long then consisting of himself and three children, and hired men who were employed by him from time to time, and that she continued to do such work for Ben W. Long in his home up until the date of his death, to wit, October 25, 1930, excepting that during the year 1912, with his consent, she was absent temporarily for a period of three months, and also during the year 1916 she was absent temporarily, with his consent, for a period of six months, such absences being while she was on a visit; that the said services so rendered to the decedent were continuous during all of such period from January, 1904, up to the date of his death; that, during the last five months of the lifetime of the decedent, she also did nursing and caring for him during his last sickness; that the services rendered by her between July 1, 1904, and April 1, 1917, were of the reasonable value of Ten Dollars per week; that the services rendered between April 1, 1917, and April 1, 1921, were of the reasonable value of Twenty Dollars per week; that the services rendered between April 1, 1921, and May 25, 1930, were of the reasonable value of Twelve Dollars per week; and that the services rendered between May 25, 1930, and the date of his death were of the reasonable value of Twenty-five Dollars per week; that Ben W. Long made payments to her from

time to time on said account, the exact dates of which are un-known to her; but that the total amount so paid does not exceed the sum of $2000, and she is willing to allow a credit on her account against decedent in the sum of $2000; that the balance due is unpaid, and she asks that her claim be allowed against the estate in the sum of Eleven Thousand Six Hundred Thirty Dollars.

The defendant-administrator, in his answer as amended, alleges, in substance, that he admits that the claimant received the sum of Two Thousand Dollars from the decedent during his lifetime, and denies the remaining allegations of plaintiff's claim. As a special defense, he pleads that portions of the claim are barred by the Statute of Limitations. As another and second special defense, he pleads:

"That sometime within the six weeks prior to the 25th day of October, 1930, your administrator being unable to state the exact date thereof, this claimant and the decedent Ben W. Long entered into an oral agreement for the compromise and settlement of any and all claims which the said Christina Strand might have against the said decedent Ben W. Long; that by the terms of said oral agreement, the decedent, Ben W. Long, offered and agreed to pay, and the said Christina Strand accepted and agreed to take, the sum of Four Thousand Dollars ($4,000) in full settlement of any and all claims of whatsoever nature, kind or description she might have against the said Ben W. Long, said sum to be paid to her after his death from his estate by his administrator. This administrator, in accordance with the terms and provisions of the oral agreement and contract entered into between the decedent, Ben W. Long and this claimant, Christina Strand, states and admits that he is indebted to the said, Christina Strand in the sum of Four Thousand Dollars ($4,000) and offers to confess judgment in the sum of Four Thousand Dollars ($4,000), together with accrued costs in this action in performance and execution of the agreement hereinbefore referred to and entered into between this claimant and the decedent Ben W. Long."

The evidence establishes the fact that the services, as claimed by the plaintiff, were rendered, and we will give the same no further consideration.

Relative to the second special defense hereinbefore men-

tioned, Ida Warner, who was in the employ of the deceased during his last illness, testified that she had a conversation during said period with the claimant about a claim which she was making for services; that she heard the claimant and the decedent talking immediately before the claimant talked to her about the matter; that she did not hear what the claimant said; that the claimant came out of Mr. Long's room and said to her that Long asked her how $4,000 would do; that the claimant said to the witness that she wished that she (the witness) had heard the conversation; that the claimant told her that Ben (the decedent) wanted her to have $4,000. One of the daughters of the decedent testified that, after the death and before the funeral of decedent, the claimant talked to her and her sister about her claim, saying:

"She asked us first how the money was to be got to pay her. Then she said she had talked to my father preceding his death concerning a $4,000 settlement. She said that she had talked to my father preceding his death, and she had asked him for $1,000 and he said 'yes'; $2,000 and he said 'yes'; $3,000 and he said 'maybe,' and $4,000 and he said 'yes'. Q. Did she ask how she could get this money? A. She did. Q. What did you tell her, if anything? A. We told her we didn't know. I talked with her after that about her claim, the next day. Q. What did she say about the claim? A. She was to have $4,000. Q. Did she tell you that? A. She did."

The administrator testified that on the Sunday following his appointment, he had a conversation with the claimant relative to her claim, saying:

"Miss Strand approached me first about the debts, telling me that the debts must be paid, and I said, 'Why, certainly they must be paid, that was the purpose of administering this estate.' She wanted to know how they were to be paid. 'Why,' I said, 'the property will have to be sold and liquidated and the claims will have to be filed, and that thereupon they would be allowed and paid from the proceeds of this estate.' She asked me about her own claim. I says, 'Well, what does the claim consist of'? She said, 'Mr. Long told me before he died that after his death I was to have $4,000.' 'Well,' I said, 'I don't know anything about that, but how do you arrive at it?' She said that 'I talked with Mr. Long shortly before he died about my wages and what I was

to get, and I asked him what I should have.' She said, 'I first asked him if I shouldn't have $1,000. And then I asked him if I couldn't have $2,000, and if I couldn't have $3,000.' And she said when it came to the $3,000, Mr. Long said, 'Well, maybe.' She said, 'Don't you think I am worth it?' 'Well,' he said, 'yes'. 'Shouldn't I have $4,000?' There was some talk between her and him, as she related it to me, about the $4,000, and finally he said 'yes,' and she said, told Mr. Long, 'if I could get $4,000 that would be all right; and I want to know how to get it.' I said 'You will have to get it in the same order that other claims are allowed. You will have to file your claim with me and it will be allowed.' The conversation as I recall it now was finally closed in substance as this: She said, 'Don't forget, Mr. Bleakley, that Mr. Long agreed with me that I should have $4,000, and that is what I am to have.' ''

He further testified that the day following the sale of the personal property he had another conversation with her in the Long home, at which time the claimant left the home to reside at Springville, and that at that time the claimant said: '' 'Don't forget that Ben said and Ben agreed with me that I should have $4,000 for my work.' And I said, 'I won't forget it, Miss Strand —come in and see me,' and that was the end of that conversation;'' that he had other conversations with her in which she wanted to know how about her $4,000. ''Q. And in these conversations did she say when she was to have the $4,000, the agreement was? A. She said, yes—she did tell me when. She said, 'Ben agreed with me after his death I should have $4,000 for my wages.' She said that she had agreed with Ben Long before he died that she would have $4,000 for her wages when he died. She did not say if paid before he died.''

The aforesaid testimony is corroborated by other witnesses who were present at the times of the conversations. The claimant, in rebuttal, testified that she does not remember, but that she probably did have a talk at the time mentioned by the daughter. She then gave the following testimony: ''Q. If you said anything that day, what did you tell the girls, or any one? A. I told them that their father said he wanted me to have $4,000. I did not tell them that I agreed to take it. Q. Had you ever agreed to take it?'' Over objection that the question calls for an opinion and legal conclusion, which the court over-ruled, the

claimant answered, "I did not." The defendant's motion to strike the answer for the same reason was overruled. She admitted talking to the administrator and saying to him that Mr. Long wanted her to have $4,000, and further testifying: "I never stated to Mr. Bleakley that Mr. Long said he wanted me to have $1,000 or $2,000 or $3,000. I never made any such statement to any of them about $1,000 or $2,000 or $3,000. Q. Was there ever anything of that kind said by you? A. I talked to them sometimes, but I never made no statement like that." The foregoing gives all the testimony of the claimant upon this question and the substance of the testimony relied upon by the appellant to establish the agreement referred to in the special defence.

The court instructed the jury that, if they should find from a preponderance of the evidence that such agreement was made, and for the agreed sum of $4,000, they should return a verdict in favor of said claimant in the sum of $4,000 and no more. The jury returned its verdict in favor of the plaintiff for $7,500. It is therefore manifest that the jury found against the administrator as to the claimed contract of settlement.

■ The appellant bitterly complains of the rulings of the Court in overruling the objection to the interrogatory, "Had you ever agreed to take it ($4,000)?" and permitting her to answer "I did not," and in his refusal to strike the answer upon his motion. The objection does not relate to the competency of the claimant as a witness, the objection being that the question calls for the opinion and conclusion of the witness. The objection and motion were good, and should have been sustained, and the testimony should have been excluded. See Hicks v. Williams, 112 Iowa 691; Farmer v. Brokaw, 102 Iowa 246; Miller v. Boone County, 95 Iowa 5; Ward v. Dickson Brothers, 96 Iowa 708; Eggleston v. Mason & Company, 84 Iowa 630; Dempsey v. City of Dubuque, 150 Iowa 260; Kelly v. Muscatine, Burlington & Southern Railroad Company, 195 Iowa 17. Many other cases could be cited upon this proposition. The question as to whether the claimant agreed to take $4,000 in settlement of her claim, as alleged by the administrator in his answer, goes directly to and involves the identical, vital issue to be tried and to be determined by the jury. As said in Miller v. Boone County, 95 Iowa, 5, reading at page 10:

"That question was for the jury, and a witness ought not to be allowed to find the fact for the jury."

It is apparent that the court permitted the claimant to answer as a conclusion the very question which was for determination by the jury. There is ample testimony in the record from which, and the fair inferences to be drawn therefrom, the jury could well find that a contract of settlement had been entered into as alleged by the administrator, and we cannot say that, without the aforesaid answer to the improper and objectionable interrogatory, they would not have so found. Therefore, we cannot hold that the error committed by the court was not prejudicial.

But the appellee contends that the answer is not prejudicial "because the alleged oral agreement of settlement, even if proven, would not constitute a defense to the claim for the reason that in order to make an accord effectual there must be a satisfaction, a performance." In his argument, the appellee states "the administrator then pled an alleged accord, but without a satisfaction or performance, a plea which in fact was not defensive to her claim." We need not pause to consider the merits or demerits of this claim now made by the appellee, as it was in no way urged in the trial court. The testimony in support of the said special defense was received without objection by the appellee, and the matters alleged in said special defense were in no way attacked by motion, demurrer or otherwise. It is thus apparent that the appellee conformed to the theory of the administrator as alleged in said special defense. The issues were made in the trial court and the case was tried upon the theory that the allegations contained in said count of the answer constituted a partial defense to claimant's cause of action, and it must be so treated by us on appeal. It is a rule often approved by this court that, if matter pleaded as a defense is not assailed by motion, demurrer or otherwise, it will, if proven, defeat the plaintiff's action, although, had the question been properly raised, the answer would have been held insufficient. In other words, an insufficient defense unchallenged in the trial court cannot be taken advantage of on appeal to this court. See First National Bank v. Zeims, 93 Iowa 140; Ormsby v. Graham, 123 Iowa 202; Hinman v. Treinen, 196 Iowa 701; New Prague Flouring Mill Company v. Spears, 194 Iowa 417; Roberts v. Ozias, 179 Iowa

1141; Security Savings Bank v. Hambright, 195 Iowa 1147. The aforesaid rule prohibits a party to the litigation from trying the case in the lower court upon one theory and presenting the case when appealed to this court upon a different theory. We reserve pronouncement upon the question as to whether the pleaded settlement would constitute a defense or partial defense had the question been properly raised in the trial court. The question is not properly before us for determination.

We hold that the court, in permitting claimant to answer, over appellant's objection, the aforesaid objectionable interrogatory and in refusing to exclude the answer from the record, committed prejudicial, reversible error as against the appellant; and for that reason the judgment of the trial court is reversed and the cause remanded for a new trial.—Reversed.

EVANS, DE GRAFF, MORLING, KINDIG, and GRIMM, JJ., concur.