JOSEPH ST. GERMAIN *vs.* CITY OF FALL RIVER.

Bristol. October 22, 1900. — February 26, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

One who for a reasonable purpose drives his wagon in a cobble stone gutter close to a curbstone in which is set a post hydrant, which he can plainly see and is approaching, and whose wheel strikes on a projecting nut of the hydrant, can be found to be in the exercise of due care, so as to recover for an injury caused by the collision.

A post hydrant so placed in the curbstone of a sidewalk that the wheel of a carriage passing close to the curbing cannot get by the hydrant without hitting a projecting nut upon it, may constitute a defect in the highway for which the city maintaining such hydrant is liable.

Water commissioners, appointed by a city council under a special statute voluntarily accepted authorizing the city to take and distribute water to its inhabitants for a price, and who are "subject to such ordinances, rules and regulations in the execution of" the powers entrusted to them "as the city council may from time to time ordain," are agents of the city for whose acts the city is liable.

TORT to recover for injuries caused by an alleged defect in Plymouth Avenue, a highway in Fall River, the alleged defect consisting of a post hydrant set in the curbstone of the sidewalk of said highway. Writ dated February 14, 1899.

At the trial in the Superior Court, before *Aiken*, J., without a jury, it appeared that the injury was caused by the wheel of the plaintiff's wagon striking on a projecting nut of the hydrant which covered a nozzle used for connection with the hose. The nut projected from one to three inches beyond the curbstone of the sidewalk, the base and top of the hydrant being about even with the outside of the curbing. The wheel of a carriage coming along the curbing could not get by the hydrant without hitting it.

The evidence showing the manner in which the accident occurred is fully described in the opinion of the court. The following is copied from a plan used at the argument:

At the close of the evidence, the defendant asked the judge to rule: 1. That there was no evidence that the hydrant in question unreasonably obstructed the way. 2. That upon the whole case the plaintiff could not recover. 3. That if the hydrant did not, under the circumstances, constitute a defect in the way intended for carriage travel, the plaintiff cannot recover. 4. That

there was no evidence that the plaintiff was in the exercise of due care.

The judge declined to give the rulings requested, and found for the plaintiff. The defendant alleged exceptions.

The case was submitted on briefs to all the justices.

*A. S. Phillips*, for the defendant.

*H. A. Dubuque*, for the plaintiff.

HAMMOND, J. Upon the evidence the question whether the plaintiff was in the exercise of due care was one of fact and not of law.

From the somewhat quaint and apparently straightforward testimony of the plaintiff it is not difficult to get a vivid conception of the circumstances. His team consisted of an ordinary express wagon, which was empty, the seat " well back," and a " slow horse," and he "had to use the whip very often." In going north on the street he went between the car tracks and the curbstone of the easterly sidewalk. He came to a place where there was a cover over a hole in which there was a " waterworks gate." The cover was " kind of shiny and kind of black like," and the slow horse did not want to go over that, and so " crowded himself towards the east." There was a man near there, " greasing the electric car-tracks," and the plaintiff was looking at him. " The horse went on pretty slowly." He noticed the horse was "crowding the curbing," and " called him to go." The plaintiff did not want him to go too close to the curbing. He thought the horse was going to stop, so he pulled up the reins and " called him to go," and, the horse seeming afraid, the plaintiff " put on the whip and started on a trot," and after going two or three feet the rim of the wheel struck the hydrant, and the plaintiff was injured. Further along in his testimony he said he was trying to stop the horse from going to the right, that he did not want the wheel to go against the curbing, so pulled him out; that the horse " started and walked two or three feet and then struck the hydrant."

He further testified that he knew his horse " did n't like to go over black things "; that he knew of the cobblestone paving of the gutter for a distance of three or four feet out from the curbing; and that the gutter " was intended for the water to run down and was intended more for carrying water than for

driving, because it would be pretty rough, poor riding, over round rock." He knew that the hydrant was there, and the accident occurred about four o'clock in the afternoon, during daylight.

In a word, the old, slow horse, somewhat suspicious of the black cover, is inclined to veer to the right and to get as near to the curbing as he can ; and he is inclined to stop rather than to run. The plaintiff seeing this gives the familiar jerk to the reins, telling the horse to "go along," but that not proving efficacious, he applies the whip, the horse starts, and being still close to the curbstone is brought up standing by the collision of the wheel with the hydrant. Such a method of driving a slow horse is a very familiar sight upon our streets, and it cannot be said as matter of law that, as respects the method of driving, the plaintiff was not in the exercise of due care.

Nor does the plaintiff seem to have lost control of the horse so as to bring the case within the doctrine of *Horton* v. *Taunton*, 97 Mass. 266, note ; or the judge may have found that the loss of control, if any, was simply momentary and not such as to prevent a recovery. *Hinckley* v. *Somerset*, 145 Mass. 326.

The fact that the plaintiff knew of the existence of the hydrant is not fatal to him. It may well be that he never had been near enough to observe that it was so erected as to be hit by the rim of a wheel coming near the curbstone.

The more difficult question is whether the evidence warranted a finding that the hydrant was a defect. It appeared that it had been there about twenty-five years. There was evidence that the base and top were "about even with the outside of the curbing," and that the nut over the hole where the connection with the hose is made projected from one to three inches beyond the curbing, and that the wheel of a carriage "coming along the curbing" would be certain to hit this nut.

There was evidence that the street was one hundred and thirty-two feet wide, including a patch of lawn in the middle of the street ; that between the lawn and the hydrant was a street railway track, and that the hydrant was twenty-two feet east of the track. A glance at the plan used in the argument shows that the street car track ran quite close to the patch of lawn, and it would be natural for a traveller going north to keep to the right of the track, or between that and the hydrant.

The street was macadamized and crowned just enough to shed water into the gutter. The whole width between the lawn and the curbstone was fitted for travel.

It thus appears that between the street car track and the curbstone there was a well constructed road, of only about twenty-two feet in width, the part near the curbstone being in the form of a paved gutter, upon any part of which the traveller might be reasonably expected to go. The judge before whom the case was tried took a view, from which it appeared that the lots abutting on the side of the street where the hydrant was were closely built upon. It is common knowledge that in such a condition of things travellers, especially grocers, milkmen and expressmen, who may desire to stop at any building, will frequently drive close to the curbstone, and may go for some distance in that way. This hydrant was so arranged that the wheel of a carriage of a person attempting to pass the hydrant close to the curbing would be likely to come into collision with the projecting nut, and such a collision might result in a serious accident; and so small was the nut and so slight the projection that the danger might well escape the attention of the traveller until the moment of contact. We cannot say as matter of law that the judge erred in finding that a hydrant thus placed was dangerous to public travel, and that by reason thereof the way was defective.

The defendant contends that the hydrant was placed there by commissioners appointed by its city council, and that in this they were not acting as the agents of the city, but as public officers for whose acts the city is not responsible; and relies upon the class of cases of which *Young* v. *Yarmouth*, 9 Gray, 386, and *Washburn* v. *Easton*, 172 Mass. 525, are types.

But the contention is not sound. The act under which the commissioners were appointed was the act authorizing the defendant city to take and distribute water for the use of its inhabitants, and was to be void unless accepted by the city; and by the express provisions of the act these commissioners are appointed by the city council for the purpose of carrying out certain of the powers granted to the city, and they are subject to such " ordinances, rules and regulations in the execution of " such powers " as the city council may from time to time ordain."

They act for the city, under the direction of the city, in the construction of works which the town had been authorized by a special statute, voluntarily accepted, to construct and receive profit from, and they therefore must be held to be the agents of the city for whose acts the city is answerable. St. 1871, c. 133, §§ 6, 7, and 19.  *Hand* v. *Brookline,* 126 Mass. 324.

*Exceptions overruled.*