## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### OF

# MASSACHUSETTS.

---

ROSA B. CUTTING *vs.* INHABITANTS OF SHELBURNE.
EDWARD T. CUTTING *vs.* SAME.

Franklin.    September 19, 1906. — October 16, 1906.

Present : KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Way,* Defect in highway. *Negligence.*

The absence of suitable railings or barriers at the sides of a bridge over a brook, the bridge being thirty feet long and thirteen and a half feet wide between stringers eight inches high on each side and forming a part of the main highway between two towns, can be found to be a defect in the highway.

In an action against a town for personal injuries and for damage to a horse and buggy from an alleged defect in a highway, if it appears that the plaintiff, while crossing a bridge only thirteen and a half feet wide which he knew well and knew to be without suitable railings, was driving a blind horse, gentle and not in the habit of stumbling, at a slow trot with the reins in his left hand and was using his right hand to tuck in the lap robe, when the horse stumbled and jerked the reins, the plaintiff grabbed the reins with his right hand and in an instant the plaintiff with his horse and buggy went over the side of the bridge into the brook below, it is a question for the jury whether the plaintiff was in the exercise of due care.

TWO ACTIONS OF TORT, the first for personal injuries, and the second for personal injuries and for damage to a horse and buggy, alleged to have been caused by a defect in a public high-

VOL. 193.                     1

way which the defendant was bound to keep in repair, the alleged defect consisting of the absence of a barrier or railing on a bridge over a brook. Writ dated February 1, 1904.

In the Superior Court the cases were tried together. At the first trial before *De Courcy*, J. the jury returned verdicts for the plaintiffs, which were set aside by the judge. The second trial was before *Aiken*, C. J. It appeared that the accident happened upon the main highway from Colrain to Greenfield, which was extensively travelled, upon a bridge thirty feet long over a brook. The bridge was open to travel thirteen and a half feet wide between the stringers which were laid upon the ends of the planking lengthwise, one upon each side of the bridge. The stringers were eight inches in height or thickness, and the top of the planking was from seven to eight and a half feet above the bed of the brook. There was no railing or safeguard upon the sides of the bridge other than these stringers which lay upon the planking.

The plaintiffs, who were husband and wife, were driving together at the time of the accident, and both testified at the trial describing the accident. There were no other witnesses who saw the accident.

Edward T. Cutting, the plaintiff in the second case, testified that he was a farmer and lived in Colrain on the main road to Greenfield about two miles from the bridge where the accident occurred; that he had travelled the road frequently for the past ten years, once a week and sometimes oftener; that the bridge had no railing during all of that time; that he had travelled over the road some fourteen years; that it is a pretty largely travelled road; that on the morning of October 1, 1903, he left home about a quarter past six with his wife, Rosa B. Cutting; that it was light and he was driving in an open buggy with a single horse; that the horse was about twelve or fourteen years old, weighed eleven hundred pounds and was blind; that he bought the horse about six months before and had driven it during that time as often as every other week to Greenfield, some six miles, over this road, and some of the time as often as two or three times a week, and had driven it elsewhere, and during the time had used it as a general driving horse; that his ten year old son had driven the horse several times and had

driven it to Greenfield; that on the morning of the accident he was seated upon the right hand side of the buggy, driving, with his wife at his left hand; that when he arrived within about one hundred feet of the bridge his whip caught upon the limb of a tree and was pulled out of the socket; that he stopped his horse and got out and picked up the whip and put it into the buggy, and got in again and tucked up the robe and started along; that it was a cold, chilly morning and as he approached the bridge he wanted to tuck the lap robe around his feet; that he then was driving with one hand, and had the reins firmly in that hand; that the horse was then just on the bridge; that the horse was going at a slow trot, something like five or six miles an hour, very nearly in the regular tow path; that he reached down with his right hand to tuck in the lap robe around his feet when he felt a jerk of the reins; that as the horse jerked the reins he grabbed them with the other hand, and that in an instant they were over the side of the bridge, his wife, himself, the horse and the buggy into the brook; that there was no railing upon the bridge where they went off but only a stringer upon the side of the bridge about eight inches high.

Rosa B. Cutting, the plaintiff in the first case, testified in describing the accident " that she saw the horse stumble as it went on to the bridge, but only once; that the horse went on one side a little before her husband jerked on the reins; as the horse stumbled he went one side a little."

At the close of the evidence, the defendant asked the Chief Justice to rule that on all the evidence the plaintiff was not entitled to recover, and that, there being no evidence to show due care on the part of the plaintiff in either case, the verdicts must be for the defendant.

The Chief Justice refused to rule as requested, and submitted the cases to the jury.

The jury found for the plaintiff Rosa B. Cutting in the sum of $1,620, and for the plaintiff Edward T. Cutting in the sum of $250; and the defendant alleged exceptions.

*D. Malone,* for the defendant.

*S. D. Conant,* for the plaintiffs.

BRALEY, J.   A refusal to rule at the close of the evidence that these actions could not be maintained raises the questions of law

presented by the exceptions.  They are, whether the plaintiffs' injuries were caused by want of a sufficient railing upon the bridge which formed part of the highway, thus causing a defect which might have been remedied by reasonable diligence on the part of the defendant, and whether at the time of the accident they were in the exercise of due care.

In speaking of this obligation imposed upon towns, Mr. Justice Ames, in *Marshall* v. *Ipswich*, 110 Mass. 522, 526, said, " The purpose of such railings is to make the way itself safe and proper for use.  They are required in the case of bridges, embankments or causeways, and generally where excavations, deep water, etc., are so near to the line of public travel as to expose travellers to unusual hazards."

It is sufficient to say that upon this question, which was an issue of fact, the jury could find that the highway, originally laid out in 1784 and relocated in 1826, had become defective because of the absence of a sufficient railing, which if erected and maintained would have rendered this part of the road safe and convenient for the use of travellers and prevented the accident. *Lyman* v. *Amherst*, 107 Mass. 339. *Harris* v. *Newbury*, 128 Mass. 321. *Tisdale* v. *Bridgewater*, 167 Mass. 248. *Harris* v. *Great Barrington*, 169 Mass. 271.

This defective condition was well known to the husband who acted as driver, but neither such knowledge, nor the opportunity for immediate observation which was afforded as the carriage approached the bridge, are conclusive upon the question of contributory negligence.  They are to be treated rather as circumstances to be considered by the jury with the other testimony bearing upon this issue.  We refer only to a few of the more recent decisions. *Powers* v. *Boston*, 154 Mass. 60, 63. *McGuinness* v. *Worcester*, 160 Mass. 272, 273, and cases cited. *St. Germain* v. *Fall River*, 177 Mass. 550. *Torphy* v. *Fall River*, 188 Mass. 310. *Campbell* v. *Boston*, 189 Mass. 7, 10. *Hennessey* v. *Taylor*, 189 Mass. 583, 586.  See also *Urquhart* v. *Smith & Anthony Co.* 192 Mass. 257.

The further important fact that the horse was blind also comes within this division, for how far loss of sight may have rendered him unmanageable, or contributed to the accident, depended largely upon the weight to be given to the evidence, when viewed

in the light of common experience, that notwithstanding this infirmity he could be used and driven with safety. *Brackenridge* v. *Fitchburg,* 145 Mass. 160. *Smith* v. *Wildes,* 143 Mass. 556.

If the inference either of care or of negligence which might have been drawn from this portion of the evidence was solely for the jury, nothing further remains upon which the defendant's argument can rest, except the conduct of the driver in the management of the horse. The degree of care and skill with which a horse is being driven, or which may be required under certain conditions, generally is a question peculiarly within the province of the jury to decide. *Stevens* v. *Boxford,* 10 Allen, 25, 26. *Blood* v. *Tyngsborough,* 103 Mass. 509. *Hill* v. *Seekonk,* 119 Mass. 85. *Bly* v. *Haverhill,* 110 Mass. 520.

To drive in the daytime, with the reins in one hand, at a slow trot, a blind horse which could have been found to have been gentle and unaccustomed to stumble, even if the way led over a narrow bridge without suitable railings, required only that degree of care which the ordinarily careful man would exercise if placed in an analogous situation. Undoubtedly, as the event proved, it would have been more prudent to have guided the horse by holding the reins in both hands, and to have given exclusive attention to keeping him in the centre of the bridge, instead of driving with one hand and using the other to adjust the carriage robe, with the consequent interruption of the driver's attention to the exact course of travel; yet such conduct cannot be said as matter of law to be so extraordinary as not to be fairly incidental to the ordinary use of our public ways by travellers. *Wright* v. *Templeton,* 132 Mass. 49. *Kelly* v. *Blackstone,* 147 Mass. 448, 451. *Britton* v. *Cummington,* 107 Mass. 347.

It accordingly follows that the rulings requested were rightly refused, and the cases were properly submitted to the jury.

*Exceptions overruled.*