F. M. McGEE v. JONES COUNTY, IOWA, Appellant.

**Highways:** BRIDGES: UNGUARDED APPROACH: CONTRIBUTORY NEGLI-
GENCE.  The plaintiff while driving a blind horse suddenly fainted, and upon approaching a highway bridge the horse, unguided, walked off the approach to the bridge, which was not protected by proper guard rails, resulting in injury to the plaintiff.  It appeared that plaintiff was not subject to fainting spells and had no premonition of this one, and it is held that negligence on the part of plaintiff as a matter of law was not shown in this regard.

**Same.**  Plaintiff was not negligent as a matter of law in undertaking to drive a blind horse, unquestionably gentle, along the highway and over a bridge, the approach to which he knew was not protected by suitable guards; although the blindness of the animal was a circumstance to be considered on the question of plaintiff's negligence in using the bridge knowing the unprotected condition of the approach.

**Same:** BRIDGES: UNGUARDED APPROACH.  The approach to a bridge which is essential to the use of the main structure is a part of the bridge; and where the circumstances were such as to indicate that plaintiff was precipitated from the highway at the unguarded approach to the bridge, the question of defendant's negligence in failing to provide suitable guards was for the jury.

**Same:** NEGLIGENCE: PROXIMATE CAUSE.  Where plaintiff, while driving a blind horse, suddenly lost consciousness and the horse walked off the unguarded approach to a highway bridge, the negligence of the county in failing to provide suitable guards at the approach to the bridge was the proximate cause of the injury, rather than plaintiff's loss of consciousness and the blindness of the horse.

**Same:** INSTRUCTION: CONCURRING CAUSES.  The court's instruction that if the injury was the result of defendant's negligence in failing to

properly guard the approach to the bridge, concurring with the act of plaintiff in fainting and thereby losing control of his horse, and the plaintiff was without fault, he could recover, was not prejudicial to defendant.

Same: NOTICE: GROUNDS OF NEGLIGENCE: AMENDMENT OF PETITION. 6 The statute requiring written notice within a specified time to the county or municipality of the time, place and circumstances of an accident occurring on account of a defective bridge, does not provide that the notice shall state wherein either party was negligent: So that even though the notice stated that defendant was negligent in failing to properly guard the approach to the bridge, that fact did not preclude an amendment to the petition, after expiration of the time for notice, alleging that the county was also negligent in failing to provide a bridge of the required width.

*Appeal from Jones District Court.*—HON. F. O. ELLISON, Judge.

TUESDAY, SEPTEMBER 16, 1913.

ACTION for damages resulted in a judgment against defendant, from which it appeals.—*Affirmed.*

*George C. Gorman,* County Attorney, and *C. J. Cash,* for appellant.

*J. W. Doxsee* and *E. E. Reed,* for appellee.

LADD, J.—About forty years ago, Jones county constructed an iron bridge near Monticello, over Maquoketa river. It was eleven or twelve feet above water and about six feet higher than the surface of the banks. It rested on stone abutments on either end, and at the south retaining walls extended from the abutment sixteen feet on one side and twenty feet on the other holding the earth of the approach. The rise from the level of the road to the bridge was gradual, and a cement apron at the edge carried vehicles on the bridge without a jar. The iron girder on each side of the bridge

begins at the abutment some eighteen inches below the plank floor and curves upward and over to the other end. On this there was a hub rail about two and one-half feet from the floor, but, owing to the curve in the girder, its south end begins about seven feet north of the edge of the bridge. Aside from this hub rail and girder, there were no guards, and the approach was without railing or other barrier to prevent travelers from going off the bridge or approach. In the morning of January 10, 1911, shortly after 8:30 o'clock, the plaintiff left Monticello by way of this bridge for a load of wood. He was driving a blind horse about twenty years old, hitched to a one-horse wagon on which there was a wood rack. He testified that he was driving along the center of the highway in a northerly direction with lines in one hand and with the other on a stake of the rack, and when near Skelly's gate, about twelve rods south of the bridge, suddenly lost consciousness and did not regain it until discovered by those passing on the ice of the river where he was lying some ten or twelve feet out from the bridge and the same distance from the shore. The horse was on the ice near the southeast corner of the bridge, as was also the wagon. The petition alleged that the county had been negligent in two respects: (1) Failing to protect travelers by the construction of guard rails or barriers along the sides of the bridge and approaches, and (2) by reason of the bridge and the approach being less than sixteen feet in width, and that plaintiff was without fault in the matter.

I. It cannot be said as a matter of law that plaintiff was guilty of contributory negligence. He had not previously fainted for forty years save once, and then from loss of blood.

1. HIGHWAYS: bridges: unguarded approach: contributory negligence.

He had no premonition that he was about to faint away and cannot be said to have been more likely suddenly to lose consciousness than other men. He was not bound, then, in the exercise of ordinary prudence, to anticipate such a condition; nor can it be said that the jury should have reached

the conclusion that plaintiff merely fell asleep, as against his uncontradicted statement that he did not, but suddenly fainted. He was driving a horse which was blind.

It was undisputed, however, that the horse was gentle, and he cannot be said as a matter of law to have been careless in undertaking to drive such a horse on the highway. *Cutting v. Inhabitants of Shelburne,* 193 Mass. 1
2. SAME.        (78 N. E. 752) ; *Breckenridge v. Fitchburg,* 145 Mass. 160 (13 N. E. 457). Indeed, such a horse may be quite as tractable as though it could see, and the absence of sight is only a circumstance to be considered in determining whether plaintiff was negligent in undertaking to drive along an approach and bridge in the condition they were shown to be. Of course, he was aware that there were no barriers or guard rails; but, even though the county may have been negligent in not providing these, this did not preclude the use of the bridge by him if as an ordinarily prudent person he believed and had the right to believe he could drive his horse over the same safely. *Reynolds v. City of Centerville,* 151 Iowa, 19 ; *Harvey v. Clarinda,* 111 Iowa, 528 ; *Sylvester v. Casey,* 110 Iowa, 256 ; *Waud v. Polk County,* 88 Iowa, 617 ; *Walker v. Decatur County,* 67 Iowa, 307 ; *Morgan v. Dallas County,* 103 Iowa, 57. The jury might well have found from the evidence that the plaintiff was in no wise responsible for his helpless condition and that he was without fault in any way contributing to his injuries.

II. It is conceded that the issue as to whether defendant, in failing to provide barriers or guard rails for the bridge and approach, was negligent, was for the jury to determine.
3. SAME: bridges: unguarded approach.        An approach to a bridge essential to enable persons on the highway to reach the main structure and without which the main structure would be incomplete constitutes a part of the bridge. *Eginoire v. Union County,* 112 Iowa, 558. The approach here might have been found and was conceded to be a part of the bridge where the horse and wagon with plaintiff pre-

cipitated to the ice in consequence of the want of barriers or guard rails to the bridge or approach. There was no direct evidence upon which to base such a conclusion, nor was this necessary. If the circumstances proven were such as to render this reasonably probable and more probable than that it happened owing to some other cause, the jury was justified in so finding. *O'Connor v. Railway*, 129 Iowa, 636; *Huggard v. Refining Co.*, 132 Iowa, 724; *Lunde v. Cudahy Packing Co.*, 139 Iowa, 688; *Brown v. Coal Co.*, 143 Iowa, 662.

The horse was old, blind, and gentle, and was being driven in the direction of the bridge when plaintiff fainted. It would likely continue in the same direction upon loss of consciousness by plaintiff, of which it would not be informed, and likely walked on until it fell from the bridge or approach to the ice. How else did it get there? But would this have happened had the road been supplied with barriers? This and other courts have found little difficulty in sustaining findings that suitable barriers in like situations would turn a horse or team when beyond control because of fright. How then can it be said that these, if provided the bridge and approach, would not likely have turned this gentle twenty-year old slowly moving blind horse? Surely the evidence was such as to carry this issue to the jury.

III. Assuming then that the horse walked off the bridge or approach because of the negligence of the county in failing to provide these with barriers thereby causing the injury, was such negligence the proximate cause of such injury? Appellant contends this was in consequence of the blindness of the horse in connection with the loss of consciousness on the part of plaintiff, and for this reason the jury should have been directed to return a verdict for the defendant. There are decisions sustaining this view, but the rule has been otherwise in this state for more than forty years and is sustained by the great weight of authority. *Manderschid v. City of Dubuque*, 25 Iowa, 108; *Byerly v. City of Anamosa*, 79 Iowa, 204; *Nocks*

4. Same: negligence: proximate cause.

*v. Incorporated Town of Whiting,* 126 Iowa, 405; *Overhouser v. American Cereal Co.,* 118 Iowa, 417. The decisions *pro* and *con* will be found collected in a note to *Schaeffer v. Jackson Township,* 18 L. R. A. 100.

The question has generally turned on whether the fright of a horse or a defect in the highway is the proximate cause, where the horse because of such fright has escaped the control of the driver and it or those in the vehicle have been injured on account of such defect. As noted in the *Manderschid* case, however, it is immaterial whether what may be termed the primary cause is the breaking of the carriage or harness or the fright and running away of the horse or some other mishap, if without the fault of the party complaining. Thus in *Hunt v. Town of Pownal,* 9 Vt. 411, the nut which had been secured on the inner end of the bolt connecting the left arm of the tongue to the forward axletree came off. The wheels thereupon turned out at right angles with the road, toward the river and the wagon with all its contents was precipitated down the bank. Under these facts, the court held:

If the road be out of repair, and the injury happened by reason of such want of repair, and the plaintiff or his agents are guilty of no want of care and prudence, the defendants are liable. . . . If there be no fault on the part of the plaintiff, which common sagacity and forecast could have anticipated and provided against, and the loss be the combined result of accident and the insufficiency of the road, the plaintiff may recover.

In *Baldwin v. Greenwood Turnpike Co.,* 40 Conn. 238 (16 Am. Rep. 33), the iron band attached to the end of one of the shafts to the axletree broke, and the shaft, with the crossbar, fell upon the horse's heel, and the horse escaped the control of the driver and ran off defendant's bridge. The court held the defendant liable, saying:

The failure of a traveler to be continually present with his team up to the time and place of the injury, when that failure proceeds from some cause entirely beyond his control,

and not from any negligence on his part, ought not to impose upon him the loss from such injury, particularly when the direct cause of the same is the negligence of some other party; the loss should be charged upon the party guilty of the first and only negligence with reference to the matter. In our judgment, the proper rule is this: If the plaintiff is in the exercise of ordinary care and prudence, and the injury is attributable to the negligence of the defendants, combined with some accidental cause, to which the plaintiff has not negligently contributed, the defendants are liable.

In *Ring v. City of Cohoes,* 77 N. Y. 83 (33 Am. Rep. 577), the rule deduced from the authorities is thus formulated:

When two causes combine to produce an injury to a traveler upon a highway, both of which are in their nature proximate—the one being a culpable defect in the highway, and the other some occurrence for which neither party is responsible—the municipality is liable, provided the injury would not have been sustained but for some defect. This appears to us to be the reasonable rule. It exacts no duty from municipalities which has not always rested upon them. They must use proper care and vigilance to keep their streets and highways in a reasonably safe and convenient condition for travel. This is an absolute duty which they owe to all travelers; and when the duty is not discharged, and in consequence thereof a traveler is injured, without any fault on his part, they incur liability. They are not bound to furnish roads upon which it will be safe for horses to run away, but they are bound to furnish reasonably safe roads; and if they do not, and a traveler is injured by culpable defects in the road, it is no defense that his horse was at the time running away or was beyond his control.

The rule obtaining in cases to the contrary is thus stated in *Manderschid v. City of Dubuque, supra*:

The defendant is guilty of negligence; the plaintiff could not exercise care; because of these facts uniting, plaintiff sustains loss; therefore defendant is not liable. Or, in other terms, as follows: The defendant negligently permits a pit in the highway; it was impossible for plaintiff to use care to keep his horse out of it; therefore defendant is not liable.

The doctrine is there denounced as against reason and absurd in its results.

In Gould v. Shermer, 101 Iowa, 582, the rule is laid down that, if some other cause operates with the negligence of the defendant to produce the injuries complained of, this will not relieve him from liability, if his wrong concurring with some other cause was the proximate cause of the injury. In some of the cases, the accident occasioning the escape of the horse is referred to as merely incidental, while the negligence of the municipality in not properly maintaining the highway is denominated the dominating, controlling cause. Indeed, the proximate cause is often said to be the dominating, controlling one and not such as is merely incidental.

Yoders v. Amwell Township, 172 Pa. 447 (33 Atl. 1017, 51 Am. St. Rep. 750). There, one Watson took two girls in his carriage to a church sociable. The night was dark, and on their return, when on a bridge, one of the girls dropped her hat from the buggy. Watson drove over the bridge, and stopped about fourteen feet from the north end, giving the reins to the other sister, and got out and picked up the hat. In some way, the horse took fright and backed off the side of the bridge, which had no barriers. The court, in holding that the plaintiff (one of the girls) was entitled to recover, said:

The dominant cause here was a bridge negligently dangerous to the ordinary horse at all times, when he displayed one of his common characteristics. True, his fright was an incident without which the dominating cause could not have operated to produce the injury; but the same may be said of most of the incidents connected with the trip on the highway that evening. If plaintiff had not dropped her hat, if Watson had not stopped to get it, and so, running back to the originating cause, going to the 'sociable' behind a horse instead of on foot; all were in a certain sense causes of the injury, without which the accident would not have happened, but occurring in the ordinary, lawful use of the highway. The law regards them as but incidents, and still

holds the neglect of duty as the dominating or proximate cause.

As said, it is quite immaterial how the horse escaped control of the driver providing this was without fault of the plaintiff. He was making the ordinary and lawful use of the highway. He was quite as free from fault in losing control because of his unconsciousness, as he would have been had the horse taken fright and escaped his control. While the highway is primarily for travelers and vehicles under control, yet the defendant must be held to anticipate that horses may get beyond control of their drivers because of fright, accident, or mishap, and the plaintiff was no more in fault, nor he and his horse any less entitled to protection, because he lost control through a faint, than had this occurred owing to some accident to his vehicle or the frightening of the animal. His condition did not relieve the county of the duty of providing a reasonably safe bridge to pass over, and, if it did not furnish this and the injury was caused by such failure without his fault, he is entitled to recover. The jury, as they might have done under the evidence, found plaintiff without fault and that the defendant was negligent in the respects alleged, and we think it was open to them to say that the proximate cause of the injury was such negligence.

In one of the instructions, the court submitted the issue on the theory of concurring causes; that is, that if the injury was the result of the negligence of the defendant and the act of plaintiff in fainting and thereby losing control of his horse, and he was without fault, he might recover. Appellant argues that the doctrine has no application save where the concurring causes operate at the same time, and probably such was the situation in the cases heretofore determined. See *Walrod v. Webster County,* 110 Iowa, 349; *Harvey v. Clarinda,* 111 Iowa, 528; *Faulk v. Iowa County,* 103 Iowa, 442; *Miller v. Boone County,* 95 Iowa, 5; *Eginoire v. Union County,* 112 Iowa, 558; *Newcomb v. Montgomery County,* 79 Iowa, 487. But it is quite immaterial whether the accident or mishap by which the horse

5. Same: instruction: concurring causes.

escapes control be regarded as a concurring cause or not, and therefore it is unnecessary to determine whether to be such it and the negligence of defendant have operated at the same instant. We are inclined to regard the accident as an incident only leading up to the injury and to treat it as significant only in ascertaining whether plaintiff has been at fault in bringing about the injury resulting from the defendant's negligence. Submitting on the theory of concurring causes, however, was entirely without prejudice.

IV. The petition as filed September 4, 1911, alleged but one ground of negligence, i. e., the failure to provide the bridge with barriers or guard rails. In an amendment thereto,

6. SAME: notice: grounds of negligence: amendment of petition.

filed December 7th of the same year, another ground of negligence, that it was less than sixteen feet wide (the statute, section 1572, Code, exacting that it must not be less than sixteen feet wide), was added. A motion to strike this amendment was filed and overruled on the same day and an answer filed. It is contended that the latter ground of negligence is not included in the notice served on the defendant. The statute exacts that actions "founded on an injury to the person on account of defective roads, bridges, streets or sidewalks" must be begun "within three months, unless written notice specifying the time, place and circumstances of the injury shall have been served upon the county or municipal corporation to be charged within sixty days from the happening of the injury." Paragraph 1, section 3447, Code. It is not questioned but that the time and place were stated. The defect, if any, was in detailing the circumstances; that is, in stating the facts of the transaction. The statute quoted does not cast the burden of defining in the notice wherein either party may have been derelict. The design is to advise the county of the facts that it may investigate and ascertain what may have happened when these are fresh in mind, and not to point out the county's shortcomings save as these may be inferred from the necessary recital of the circumstances. The

notice, after reciting in detail precisely how it is claimed to have happened, together with the nature of the injuries, added that said bridge and the approach thereto were defective in that there was no proper barrier or guard rail along the embankment or the approach to said bridge, nor at the entrance to said bridge, and at the place the road and approach are narrow and should have been protected by a barrier or guard, and that said defects have existed for a long period of time, and that had there been a barrier or guard rail the undersigned and his horse would not have fallen from said approach or bridge.

This was unnecessary, as the statute did not require the plaintiff to point out wherein the county was at fault or the causes of the injury save as these may have appeared from the circumstances related. It is said in the notice that the road and approach were narrow, and it is so alleged in the amendment, and, even though plaintiff did state the cause of the injury, this did not preclude the allegation of another in his petition or amendment. Not being required to mention the respects in which the county may have been negligent, it was not entitled to rely for these on the notice, and therefore there could be no estoppel from setting up other causes or grounds of negligence in the action when begun. There was no error in not striking the amendment to the petition.

V. The point that the narrowness of the bridge should not have been submitted to the jury as a cause of the injury was not assigned as error nor mentioned in the propositions and authorities in the brief. For this reason, it is not considered. As, appellant says, the bridge was conceded to have been of statutory width, the submission of the issue doubtless was without prejudice. The criticisms of the instructions otherwise are of excerpts therefrom and are entirely dissipated by considering them as a whole. Other exceptions require no attention.—*Affirmed*.

Weaver, C. J., and Deemer, Gaynor, Preston, and Withrow, JJ., concur. Evans, J., absent.