SUSAN M. STEVENS, Appellee, v. CITY OF CHARITON, Appellant.

**TRIAL:** Inconsistent Findings.   Evidence reviewed, and held to present no inconsistency with a special finding, and consequently, no basis for new trial.

**JUDGMENT:** Non Obstante Veredicto.   A special finding which is not, *of itself*, sufficient to justify a judgment *non obstante veredicto* may not be aided by a resort to the evidence.

**TRIAL:** Evidence Based on Exhibits—Failure to Introduce Exhibits.   Expert testimony, taken by deposition and based on certain exhibits, may be received prior to the introduction of the exhibits, when the court is led to believe that such exhibits will be later introduced; and if such introduction is not made as to all the exhibits, and the opposite party makes no effort to exclude the prematurely received opinion, he may not later complain, especially when the materiality of the non-introduced exhibit is not made to appear.

**NEGLIGENCE:** Safe and Unsafe Ways.   Negligence may not be predicated on the failure of a pedestrian to take a path or way other than he did take, when there is *no* evidence as to the condition of such other way.

**NEGLIGENCE:** Using Known Defective Way.   It is not negligence to pass over a way known to be defective, in the absence of a showing that the party knew it was imprudent to do so.

*Appeal from Lucas District Court.*—SENECA CORNELL, Judge.

### JUNE 27, 1918.

ACTION to recover damages consequent upon a fall, resulted in a judgment for the plaintiff.   The defendant appeals.—*Affirmed.*

*J. W. Kridelbaugh,* for appellant.

*C. F. Wennerstrum* and *William Collinson,* for appellee.

LADD, J.—I. Court Avenue of the city of Chariton extends east and west.   In the sidewalk, four feet in width and

on the north side thereof, between Sixth and Seventh

**1. TRIAL: inconsistent findings.** Streets, as is alleged, there was allowed by the defendant, during November, 1915, and the year previous, "to exist a dangerous place in said sidewalk, due to a demolition of a prior existing sidewalk, upon which were scattered loose and broken bricks, and bricks protruding from an uneven surface of the ground, the ground at the time of the accident herein complained of being frozen and irregular and uneven, said condition existing on the south side of Lot 26 of Eikenberry & Stewart's Addition" to said city, of which condition the officers of the city had long been aware. It is further alleged that, on November 29, 1915, at about 2:30 o'clock in the morning, plaintiff, with her niece, while passing in front of said Lot 26, stumbled over said loose bricks and rough and uneven surface and the protruding brick, and fell, at a point approximately 139 feet west from the curb line of Sixth Street, and on the south side of Lot 26, seriously injuring her. The answer was general denial.

The evidence tended to show that Mrs. Stevens, with her niece, arrived at the depot of the Chicago, Rock Island & Pacific Railway Company in Chariton at about two o'clock in the morning; and, as the omnibus was loaded, and the train on the Chicago, Burlington & Quincy Railway Company's line was due for Osceola in about a half hour, they undertook to walk to the depot of the latter company, and, as they were passing in front of Lot 26, aforesaid, plaintiff fell.

The jury, in answer to special interrogatories, found that there was no brick sidewalk in front of Lot 26, and none "which would permit of two persons walking thereon side by side." Counsel for appellant contends

**2. JUDGMENT: non obstante veredicto.** that these answers were inconsistent with the verdict, for that, under the undisputed evidence, the plaintiff must have been injured while walking

on a sidewalk, and, therefore, motion for judgment notwithstanding the verdict should have been sustained; and in any event, a new trial should have been granted. Disposing of the contention that judgment should have been entered *non obstante,* we have to observe that the petition, as seen, does not allege the existence of a sidewalk, and neither the evidence nor the special findings are inconsistent therewith. It is said, however, that, under the undisputed testimony, the injury must have been suffered when walking on a brick walk, and hence elsewhere than in front of Lot 26. If so, plaintiff would not be entitled to judgment *non obstante,* for resort may not be had to the evidence as a basis for such a motion. *Schulte v. Chicago, M. & St. P. R. Co.,* 114 Iowa 89. But, if the evidence were contrary to the special findings, this might constitute ground for new trial. A review of the evidence discloses that there was no such inconsistency. The plaintiff testified:

"Here this loose brick, or whatever it was, threw me down, and that is as far as I know. * * * It was a hard substance of some kind, either brick or stone, in the walk. * * * I stepped on it, my foot. * * * It was a brick walk from the depot to the place. I didn't notice what kind of a walk it was at the time, only I know it was a good walk until we got there. There was a walk leading up there * * * seems like the walk was bad when I fell,—bad walk. Q. What kind of a walk was it? A. Well, it was a brick walk, I should judge. Q. How wide was that brick walk? A. Well, it was wide enough for my niece and me to walk side by side. Q. Both of you were walking on the brick walk? A. Yes, sir. Q. Did you step in a hole on that brick walk? A. No, sir. Q. Did you stumble on that brick walk? A. I stumbled on a brick. * * * I could see there was a walk there. Q. If the brick hadn't been sticking up there,—that loose brick,—you wouldn't have been injured, would you? A. Well, I don't think I would; if it had been a good walk, I wouldn't have

been injured. Q. It was the fact that the brick stuck up there—that you stumbled over that brick—that caused your injury? A. That brick turned my foot when I stepped on it. It throwed me down. If it had been a good walk, I wouldn't have fell. Q. Brick was loose? A. The brick was loose." The witness explained that it threw her down. "Q. Then the brick wasn't in the walk?" She answered that it was in the walk, and, later on, that it was on top of the walk; but, on redirect examination, she said that she did "not make any examination as to the kind of a walk was along there, for the reason that we were trying to get to the other train to catch that. We did not stop to look at the walk or anything. * * * I did not notice the kind of a walk it was * * * did not make any investigation about the place of the accident."

The niece described the place of the fall with reference to the house, and Bradbury testified that bricks were scattered around in there. "They had a walk along the side, and they put one on the other side, and they were scattered all over." Paton, who owned Lot 26, swore that the brick of the walk in front of it had been removed and piled up in the yard and on the parking, except those strung along on the south of the walk line, to walk on. Willoughby described the walk at that place as "rough," and said "there was a walk around the north side of it, three bricks wide, then there were bricks scattered along in the walk;" that "there was no regularity as to where the walk should have been," and that the bricks were "just scattered like someone had thrown them down a little way apart to step on—just scattered them around that way." Pettit declared that "the walk was full of brick from one end to the other, scattered in there irregularly," and that the walk was uneven.

"There were brick placed on the side of the walk line. The brick on the south side of the walk and on the north side of the line of trees. * * * I have had occasion to walk up

there at night, and it is not very well lighted, not enough so as to distinguish anyone very plainly there at night. The shade of the trees would prevent the light of the street light from shining."

Strover swore that:

"It was just like any natural foundation of clay that had been rained on, and if I remember right, there were a few bricks that people had thrown in there to step on. Q. It had the appearance of somebody having thrown in there to step from one brick to another? A. That is the way it looked to me; in fact, I supposed everybody had slammed at that clay as they went there, to make a place to step."

Twiman, who was employed to construct a new walk, was asked about conditions there, and answered that he "found a walk just about one brick, where there had ought to have been a half dozen."

"Q. Where did you find those brick? A. Right on each side of the walk; some of them right in the walk line; just as though a man had taken a wheel barrow and dropped them in there."

This evidence harmonizes with the allegations of the petition, and discloses how plaintiff was misled into thinking that the walk, though bad, was of brick, of which fact she disclaimed knowledge. The testimony of the niece indicated where the accident occurred with reference to the house on Lot 26. The contention that plaintiff could not have been misled as to the existence of the walk, owing to a light not more than 150 feet away, is disposed of by the testimony of Pettit that trees obstructed such light. Plainly, the issues were for the jury, and there was no error in overruling the motion for new trial.

II. Exception is taken to rulings on the admissibility of

the testimony of Dr. Grimes, taken by dep-
osition. After he had qualified, questions
were propounded:

**3. TRIAL: evidence based on exhibits: failure to introduce exhibits.**

"I herewith hand you Exhibits A, B,
and C, and ask you what condition is there
shown."

On objection that the exhibits were not offered in evidence when the deposition was taken, and not identified when the doctor was examined, and that Exhibit C had not been introduced in evidence, the court remarked:

"Weren't these exhibits identified and offered in evidence?

"Mr. Wennerstrom: They were identified and so marked. They were returned with deposition, and have been in the custody of the clerk ever since.

"Court: On the professional statement of the attorney that these are the exhibits that were returned by the notary. together with a certificate of the notary that he sent such exhibits, marked A and B, the objection is overruled."

The doctor then answered numerous questions as to what the three exhibits disclosed. As he based his answers upon the three exhibits, it is contended that, inasmuch as Exhibit C was not introduced in evidence, the deposition should have been rejected.

Plainly enough, the ruling was made on the theory that these exhibits would be introduced in evidence. Wennerstrom referred to all three, and the objection was to questions calling for expert evidence based on all three. The order of the introduction of evidence was for the determination of the court; and, had Exhibit C been identified and introduced in evidence later on, as the court had a right to assume it would be, there could be no doubt as to the correctness of the ruling. As the evidence was received on this understanding, upon failure of plaintiff to introduce the exhibit, defendant should have moved to strike the evidence

based thereon. Omission so to do was a waiver of the defect
in the foundation for the doctor's testimony. During the
examination of Dr. Yocum, counsel for defendant conceded
that:

"These are the X-ray photographs of Mrs. Stevens' left
hand after the injury, taken some time in February, Ex-
hibits A and B."

These were received in evidence without objection. We
have no means of knowing what the radiograph, Exhibit C,
represented, and there was no showing that it had any bear-
ing on the questions submitted to the physician. The rule
is well established that error in a ruling must affirmatively
appear, in order to predicate a reversal thereon. For all
that appears, Exhibit C may have had no bearing what-
ever on the nature of the injury; and if so, omission to in-
troduce it in evidence in no manner prejudiced defendant,
even though all three exhibits were submitted to the witness,
upon which he was called to express opinions. For these
reasons, we are of opinion that there was no prejudicial
error at this point.

III. The evidence showed that there was a sidewalk
on the south side of the street, and that the street was paved.
Whether this sidewalk or the pavement was in a reasonably
safe condition, or even in as safe condition
as the way pursued by plaintiff, does not ap·
pear. In the absence of such a showing, the
court rightly refused to submit to the jury whether plaintiff
was negligent in not taking such walk or pavement. Nor
was there any evidence that plaintiff's mind was diverted
from the walk. She was pursuing the journey with the ob·
ject of reaching the depot in time for the train, precisely as
a large percentage of pedestrians travel over the walks to
meet some engagement or to reach a particular destination;
and there was no error in refusing the seventh instruction
requested. Though there was no evidence indicating that

4. NEGLIGENCE:
   safe and un-
   safe ways.

she proceeded otherwise than as a person ordinarily would, yet, if it might have been inferred that she did, this phase of the case was covered sufficiently by the instructions given.

5. NEGLIGENCE: using known defective way.

Even had she observed the condition of the walk over which she was traveling, unless, in proceeding, she appreciated the danger of so doing, or, as an ordinarily cautious person, ought to have appreciated it, and ought to have recognized that it was imprudent for her to do so, making use of it cannot be denounced as negligent. *Reynolds v. City of Centerville,* 151 Iowa 19; *Gibson v. City of Denison,* 153 Iowa 320; *McGee v. Jones County,* 161 Iowa 296; *Covert v. Town of Lovilia,* 167 Iowa 163; *Hanson v. City of Anamosa,* 177 Iowa 101. The requested instruction was defective in omitting this feature of the law.—*Affirmed.*

Preston, C. J., Evans and Salinger, JJ., concur.