NEW PRAGUE FLOURING MILL COMPANY, Appellant, v. G. A. SPEARS, Appellee.

**SALES:** Remedies of Seller—Contract Provision in re Damages.
1  Damages consequent on the refusal to accept delivery of goods will be assessed *as of the date when the buyer definitely and wrongfully refuses to accept delivery,* notwithstanding a contract provision to the effect that, even though the buyer does wrongfully repudiate his contract and refuse to accept delivery at the contract time, the seller may thereafter, from time to time, and on his own motion, *extend the time for delivery, and compute his damages as of such final extended date.*

**CONTRACTS:** Construction—Construction Against Drafter. A con-
2  tract will be construed most strongly against a party who unqualifiedly dictated its terms.

**CONTRACTS:** Construction—Reasonableness in re Damages. Parties
3    to a contract will not be presumed to have intended to give one
party an arbitrary right to wholly ignore the repudiation of the
contract by the other party, and to keep the contract alive to such
future date as will swell the damages to the maximum amount.

**APPEAL AND ERROR:** Presentation of Error to Trial Court—Failure
4    to Question Defense. Failure to challenge in the trial court the
sufficiency of the facts pleaded to constitute a defense in a matter
of private right, precludes the raising of such question on appeal.
So held as to the pleaded defense in a law action (1) that certain
provisions of a written contract were inserted without the knowl-
edge of defendant, and (2) that, at the time the written contract
was signed, it was orally agreed that defendant might cancel it if
dissatisfied.

*Appeal from Marion District Court.*—L. N. Hays, Judge.

SEPTEMBER 26, 1922.

ACTION at law, for the recovery of damages upon a written
contract for the sale of flour. Directed verdict and judgment
for defendant, and plaintiff appeals.—*Affirmed.*

*James A. Howe* and *H. L. Hoidale,* for appellant.

*Vander Ploeg & Johnson,* for appellee.

WEAVER, J.—The plaintiff is a wholesale dealer in flour, and
defendant is the proprietor of a restaurant and bakery. On
July 28, 1920, at a solicitation of a traveling salesman, defend-
ant executed a written order for the purchase from plaintiff of
100 barrels of flour. This simple and familiar business trans-
action was evidenced by a writing of such unusual and extraor-
dinary character, so insusceptible of any satisfactory abbrevia-
tion, that we here copy it *verbatim.*

"Exhibit A.

"Dated July 28, 1920.
"New Prague Flouring Mill Co., of New Prague, Minn.,
hereby agrees to sell to G. A. Spears of Pleasantville, Iowa, who
agrees to buy from seller, at said New Prague, at the price, or
prices, in the quantity, or quantities stated below, and on the

terms and conditions and subject to the agreements appearing below and on the back hereof, the following described goods:

| Number Bbls. Flour | Style of package | Seller's Brand | Price Flour, per bbl. Feed, per ton |
|---|---|---|---|
| 100 | 98 lbs. | White Pearl Flour Coarse Granulation | $14.15 |

"If any specifications are written in space immediately following, they shall apply to each shipment unless request for change reaches seller's New Prague, Minn., office 5 days before shipment and such change is consented to in writing by seller from its said office.

| | | Old Wheat Flour | |
|---|---|---|---|
| | | | |

"Ship to Pleasantville, Iowa.

"Railroad delivery desired by buyer at destination C. B. & Q.

"To be shipped as follows: November 1st, 1920, on directions to be furnished you by buyer.

"Terms: Net. Arrival draft with bill of lading attached.

"Draft through Citizens Bank.

"Freight allowed by seller to D. M.

"Par. 1. If buyer indicated a desire to have any 'shipping date' extended but fails to specify substitute date, or proposes extension or substitute date which is not satisfactory to seller, seller may, if it desires, extend 'shipping date' for such time as it may desire, but not more than 30 days, giving buyer notice by mail or telegram thereof. In event of such extension, or any other extension or postponement of 'shipping date,' buyer shall furnish directions for shipment, within such extended period, as in Clause (2) of Par. 4 (even though not specifically written on face hereof that buyer shall furnish directions), buyer's failure so to do authorizing seller to exercise, as to shipment extended, any of the four rights set out in said Clause (2). Grant-

ing of extension shall always be optional with seller. Buyer shall pay seller for any and all extensions or postponements of 'shipping date' (whether at buyer's request, or otherwise), 'carrying charges' equal to 10c per bbl. on flour and 25c per ton on feed for each 30 days, or fraction thereof, extended or postponed, due on demand. Any such charges accrued on date of any shipment may be included in draft therefor.

"Par. 2. On breach of contract by buyer, seller shall recover liquidated damages as follows:

"Clause 1st: As to any of above goods shipped which buyer wrongfully fails or refuses either to accept or pay for, seller may resell same, at public or private sale, without notice, any time within 90 days from date of such failure or refusal, and recover from buyer thereon difference between purchase price thereof herein contracted and price obtained on resale, if latter be less than former; also all incidental loss and expense, including salesmen's time and expense, demurrage, storage, cartage, reconsigning, additional freight charges, etc., and any carrying charges unpaid on such goods. Resale anywhere in the usual course of seller's business, and resale at any terminal market or at or near destination shall be proper and price received conclusive unless bad faith is clearly proven.

"Clause 2d. As to any of above flour remaining unshipped by reason of buyer's breach, seller shall recover damages as follows: (a) A sum equal to 4c multiplied by the number of bu. of wheat required to make such unshipped flour, figuring $4\frac{3}{4}$ bu. to the bbl. of flour: plus, (b) a sum equal to 2c multiplied by the said number of bu., which sum shall be calculated for each 30 days, or fraction thereof, intervening between date hereof and date of breach: plus, (c) amount of decline, if any, per bu. from date hereof to date of breach, in highest closing price, at Mpls., of Number 1 Northern Spring wheat, multiplied by said number of bu. In case of a rise in such price of such wheat between said dates, instead of a decline, seller shall recover the sums at (a) and (b) above less a sum determined by multiplying amount of such rise, per bu., by said number of bu., such prices on date hereof and date of breach being taken to ascertain amount of decline or rise per bu. Any carrying charges paid on such flour only shall also be deducted from

seller's said recovery. If there is neither rise nor decline in such price, seller shall recover the sums at (a) and (b) above, less such carrying charges paid, if any. Such wheat prices as shown by 'Daily Market Record' of Mpls. or records of Mpls. Chamber of Commerce shall be conclusive unless proven materially erroneous. As to feed, or other mill products, so remaining unshipped hereunder, if any, seller shall recover difference (less freight allowed thereon, if any) between purchase price thereof herein contracted and value thereof to seller, in carload lots, at said New Prague, based on its minimum selling price on date of breach, if latter be less than former.

"Par. 3. Subject to qualifications herein, as to any goods which seller fails to ship within contract time, buyer is authorized to purchase within 30 days after such failure, in the open market, at manufacturer's prices, in quantity equal to that which seller so fails to ship, goods of the same quality as herein contracted for and recover from seller, excess of price so paid, if any, over purchase price herein, which shall be his sole remedy.

"[Signed] New Prague Flouring Mill Company, Seller,
"By [Signed] Lenz & Crawford, Salesman.
"[Signed] G. A. Spears, Buyer.

"[On back of contract.] Par. 4. Clause (1). Unless specifically written on face hereof that buyer shall furnish shipping directions, seller shall ship the within goods, as may be directed in writing on face hereof, but, if no shipping directions are written on face hereof or if directions so written are indefinite or incomplete, seller shall either request buyer to supply or complete directions or shall make shipment without so doing, in which latter event seller shall use its best judgment as to buyer's desires, observing any time limit for shipment written on face hereof. If seller requests buyer to supply lacking, or to complete indefinite or incomplete directions and buyer fails to do so within such time as seller, in its said request therefor, may limit, seller shall make shipment as last above provided at any time that it may elect, not later than 30 days after expiration of time so limited in said request.

"Clause (2). But if specifically written on face hereof that buyer shall furnish shipping directions, buyer shall be

obliged to notify seller of date, or dates, for shipment, which shall not be later than 'shipping date;' also quantity and (if within style of package is not desired) package, or assortment, wanted, and he shall take out (without previous request) all of within · goods as aforesaid, and his failure so to do shall give seller right, as to any of within goods remaining unshipped by reason thereof, to either (a) treat contract as if rescinded; or, (b) extend 'shipping date' 30 days, and thereafter (as long as buyer's said failure or refusal continues) continue the life hereof by as many such successive extensions as seller may desire; or, (c) ship such goods within 30 days after 'shipping date,' exercising its judgment as to packages desired by buyer; or, (d) terminate contract (as to such unshipped goods only), at 5 o'clock P. M. Central Time, on 'shipping date,' and recover, on such unshipped goods, damages, as set out in Clause 2d of Par. 2, construing date of such termination to be date of breach. If seller desires to exercise any of the rights (a), (c) or (d), last above, it shall, at least 5 days before 'shipping date,' give buyer written notice of such intention, specifying approximate date of shipment in case of election to ship. Mailing of such notice to buyer to within or known address shall be compliance with this par., time to be calculated from date of mailing, which shall count as first day. If notice is not so given seller shall be deemed to have elected under Sub. (b) of this Clause (2) and this contract shall automatically extend itself, as to any such goods so remaining unshipped, for 30 days at a time, (subject to aforesaid carrying charges against buyer) until buyer furnishes directions for shipment for such goods, or one of the rights (a), (c) or (d), last above, is exercised. If seller, under said Sub. (d) of this Clause (2), through mistake, terminates on a date, other than one authorized by said Sub. (d), but proximate to such authorized date, seller shall, nevertheless, recover, on such termination, damages, as in said Sub. (d), calculated on such authorized date proximate to such incorrect actual date of termination, even though notice of intended termination specifies an unauthorized date for termination, providing such notice is given, as aforesaid, at least 5 days before such proximate authorized date.

''Par. 5. If shipment is made in other than within specified

style of package, seller's current 'package differentials' govern.
Shipping directions shall not bind seller unless received at its
said office, in writing, subscribed by buyer before 5 o'clock P. M.
Central Time·on 'shipping date,' unless seller sees fit to act on
same.    Shipment with 14 days after 'shipping date' or receipt
of directions shall not be late, nor shall shipment within 5 days
before 'shipping date' be premature.    In case of provision for
shipments in installments, this contract shall be severable as
to each installment, except only as to seller's rights under Clauses
(1) and (2) or of Par. 6.    Seller's.breach or default as to any
installment shall not give buyer right to rescind or declare con-
tract broken as to, or to refuse, any other installment.    Ship-
ment will not be made in less than 'minimum' carloads, unless
entire quantity sold is less.    Right of both inspection and test,
before paying for goods, buyer waives.    Acceptance of goods
shall estop buyer from claiming damages, misrepresentation,
fraud, breach of warranty or guaranty, defect in quality or
other default, as to such goods.    Buyer's retention of any part
of any shipment for more than 30 days after payment therefor,
or receipt thereof, without reporting defect, breach or default
to seller's said office in writing by registered mail before ex-
piration of said 30 days, or his retention, or disposal, or use
of any part of any shipment after discovery of defect in qual-
ity, or other breach or default, without reporting defect, breach
or default to seller's said office by registered mail immediately
on discovery thereof, or his disposal or use of any part (exceed-
ing 10 bbls.) of any shipment before such discovery, shall each
constitute an acceptance of the whole of such shipment.    In no
case of seller's breach or default shall buyer have right to re-
scind contract, in whole or in part, or to return goods, his sole
remedy being by claim for damages.    Buyer bears all transpor-
tation risks.    Seller retains title to goods, to secure buyer's per-
formance, until full payment is made therefor.    Seller has first
lien, to amount of unpaid purchase price of, and accrued carry-
ing charges, if any, on goods involved, on all buyer's claims
for damages against carrier.    If goods are destroyed in transit,
purchase price thereof shall become immediately due and pay-
able.    Failure of bank named within, if any, or any of its
agents, to pay amount of draft to owner thereof, shall make

buyer liable in such amount, such bank being buyer's agent. In milling within goods seller shall not be confined to any particular kind or quality of wheat, unless so expressly stipulated on face hereof in writing. If 'shipping date' or last day of any time limited falls on a Sunday or a Minnesota legal holiday, first day following, other than Sunday or such holiday shall be taken or included. Net weight of goods when packed governs.

"Par. 6. If buyer, while any of within goods remain unshipped, either (a) clearly informs seller that he.will not perform contract, or, (b) directs seller to cancel contract, or, (c) requests seller to cancel contract, or (d) admits or asserts his inability to perform contract, or (e) wrongfully fails or refuses to pay any carrying charges due or pay for goods shipped, seller may, as to goods shipped which buyer wrongfully fails or refuses to pay for or accept, if any, recover damages as in Clause 1st or Par. 2, and, as to such of within goods as remain unshipped, if any, seller may, without prior notice, either: Clause (1) treat entire contract as if immediately rescinded; or, Clause (2) terminate entire contract and recover damages calculated as in Clause 2d of Par. 2, date of such termination being construed date of breach, damages to be calculated in such instance, on any and all of within goods remaining unshipped and not merely such as remain unshipped by reason of buyer's failure or refusal to furnish shipping directions therefor, and, in event of such termination, carrying charges be deducted shall be all carrying charges paid, if any, on any and all flour unshipped; or Clause (3) entirely disregard such conduct of buyer. After conduct described at (a) or (b) of this par. seller shall not elect more than once under Sub. (b) of Clause (2) in Par. 4, if said conduct is communicated by writing signed by buyer, unless buyer makes withdrawal of such conduct. If seller elects under either Clauses (1) or (2) or this par., it shall, on so electing, mail buyer notice of such election, and, failing so to do, shall be deemed to have elected under Clause (3) of this par. Seller may elect under either Clause (1) or (2) of this par., any time within 20 days after becoming aware of grounds for election. In event of conduct of buyer as in either (a) or (b) of this par. communicated by writing signed by buyer and in event seller elects thereafter under Sub. (b) of Clause (2)

in Par. 4 but fails to elect either (a) or (b) of this par. communicated by writing signed by buyer and in event seller elects therefor under Sub. (b) of Clause (2) in Paragraph 4 but fails to elect under either Clause (1) or (2) of this par. and buyer fails to communicate written withdrawal of his said conduct, or to direct shipment, contract shall terminate of itself, without notice, on last day of last authorized extension period, and seller shall recover damages, as of date of such termination, as if termination had been made under Clause (2) of this par. If buyer either absconds, becomes insolvent, is adjudged bankrupt or makes an assignment for the benefit of his creditors, seller may, if it desires, without prior notice, exercise right described in Clause (1) of this par., mailing buyer notice of such election to within or known address.

"7.  Only authority of seller's salesman is to sign this contract for, and transmit same to, seller.  Thereafter all matters must be taken up, in writing, through seller's said office. This contract shall not bind seller until it has mailed, or placed in course of transmission by telegram to buyer, at within or known address, its acceptance or confirmation hereof from either its said office, or its branch office at Pittsburgh, Penna., or Des Moines, Ia.  Such confirmation or acceptance shall always be timely if so made not later than 20 days from date hereof and shall make contract mutually binding unless offer (which this contract before its acceptance by seller, constitutes) is revoked by buyer before such acceptance.  Revocation of offer to be effectual must be in writing subscribed by buyer and received by seller at its said New Prague office before seller's acceptance, as aforesaid.  Time shall be of the essence of this contract which contains the whole agreement.  This is a contract to sell, by description, goods to be manufactured, unless specifically written on face hereof that sale is by sample.  Buyer shall not claim any extension, modification, rescission or annulment of this contract, or any part thereof, or release from any of its provisions by mutual agreement, unless such agreement is in writing, subscribed by seller.  Seller shall not waive any provision herein unless waiver is expressly agreed to in writing by it through its said New Prague office.  There are no representations, guaranties or warranties except such as may be written on face hereof,

if any, nor any agreements collateral thereto. No provision shall be construed as a penalty as that is not intended. In fixing damages as in Clause 2d of Par. 2, Sub. (d) of Clause (2) in Par. 4 and Clause (2) in Par. 6, desire is to agree upon a certain mode of calculation since seller's actual loss cannot be predetermined, would be hard to ascertain and a matter of argument and unprofitable litigation, said mode being equitable, reasonable and fair general rule for measurement of seller's prospective actual loss. Seller is not required to prove any actual loss to recover damages last above referred to. Buyer shall not, in any instance of seller's breach, recover damages by way of lost profits or injury to his business, or loss of time, labor, ingredients, products, baked goods or materials, but shall recover general damages only. Nothing shall authorize recovery from seller under either Par. 2 or Sub. (a) or (d) of Clause (2) in Par. 4, or Clauses (1) or (2) of Par. 6. Delay in seller's performance due, either wholly or mainly, to strike, fires, accidents, inability to obtain cars, carrier's embargoes, or any cause beyond its control, shall not authorize buyer to rescind or abandon contract or treat it as broken, but shipment shall be made within a reasonable time after disappearance of cause for delay, carrying charges aforesaid not to apply to period of such delay. Under Sub. (b) of Clause (2) in Par. 4 each extension period shall comprise, in itself, 30 days. If seller, in any instance, denies receipt of communication from buyer, it shall be deemed that none was received unless buyer produces seller's written acknowledgment thereof or receipt showing delivery thereof to seller by registered mail. If seller, in any instance, denies sending of any communication to buyer, it shall be deemed that none was sent unless buyer produces same. The truth of the recitals herein shall not be denied.

" 'Contract' means this identical instrument, date of which shall be date of contract. 'Herein' means in this contract. 'Hereof' means of this contract. 'Shipping date' shall mean date, or last day or period, or of time, written on face hereof, on, or before which, or within which shipment is to be made, either on directions to be furnished by buyer or without awaiting such directions, as the case may be; or substitute date, or period, if any, or last day of last extended period, if any, of

any, or either thereof, being the date on which or the last of any current period of time within which shipment is to be made or directions for shipment are to be furnished, whether the original date or time written on face hereof, or any substitute therefor, of any extension of either thereof. Abbreviations used are: bbl. for barrel; bu. for bushel or bushels; par. for paragraph; ¢ for cent, or cents; Mpls. for Minneapolis, Minnesota, and sub. for subdivision. As to Clause 2d of Par. 2: Wheat prices refer to wheat (of grade mentioned) known at Chamber of Commerce, Mpls., as 'cash' wheat 'delivered.' 'Number 1 Northern spring' refers to a certain grade of wheat adopted, or fixed, from time to time in Minnesota.''

On August 2, 1920, plaintiff sent to defendant its confirmation of the contract in words as follows:

"Exhibit B.

"Confirmation of Contract.

"New Prague Flouring Mill Co.

"New Prague, Minn., Aug. 2, 1920.

"Mr. G. A. Spears,

"Pleasantville, Ia.

"Dear Sir:

"We are pleased to hereby acknowledge, accept and confirm your contract dated July 28, 1920, solicited by our Messrs. Lenz & Crawford for the purchase by you from us, at New Prague, Minnesota, at the price, or prices, in the quantity, or quantities stated below, and on the terms and conditions and subject to the agreements appearing below and on the back hereof, the following described goods:

| Number Bbls. Flour | Style of package | Seller's Brand | Price Flour, per bbl. Feed, per ton |
|---|---|---|---|
| 100 | 98 lbs. | White Pearl Flour Coarse granulation | $14.15 |

"If any specifications are written in space immediately following, they shall apply to each shipment unless request for

change reaches seller's New Prague, Minn., office 5 days before shipment and such change is consented to in writing by seller from its said office.

|   |   |   |   |
|---|---|---|---|
|   |   |   | $ |

"Ship to Pleasantville, Ia.

"Railroad delivery desired by buyer at destination C. B. & Q.

"To be shipped as follows: November 1st, 1920, on directions to be furnished by buyer.

"Terms: Net. Arrival draft with bill of lading attached.

"Draft through Citizens Bank.

"Freight allowed by seller to Des Moines, Ia. Ter. 45-C.

"Said contract, hereby confirmed and accepted, is subscribed by you and, at the time you subscribed it, we believe our salesman left with you a duplicate thereof for your reference. In addition to what is above indicated, said contract contains the terms, conditions, provisions and agreements printed on the back hereof, said terms, conditions, provisions and agreements, printed on the back hereof, being quoted and copied from your said contract, all of which is hereby confirmed. The mailing by us of this confirmation and acceptance makes your said contract, with all of its terms, conditions, provisions and agreements, binding and effective as of its date. The intention is to hereby unqualifiedly accept your said contract, or offer, exactly as it is written and was made, any error, omission or addition herein, if any, in copying or quoting its terms, conditions, provisions and agreements, or any thereof, or any part of any thereof, or otherwise, notwithstanding. Anything herein at variance with the contents of said contract, or offer, shall not have any effect, but the contract, or offer, itself shall be evidence of its contents and of what is hereby accepted, this being an absolute and unqualified acceptance of said contract, or offer, in compliance with Paragraph seven thereof.

"[Signed] New Prague Flouring Mill Co.

"By G. A. Brady."

Upon the back of this instrument is reprinted *in extenso* all the matter contained in and upon the order hereinbefore set out, except that it omits the words "old wheat flour," found in the original. At this point in the statement, we think it material to refer to the physical characteristics of the writing in question. It is written upon a printed blank form, prepared by the plaintiff, on a single sheet or slip of paper of the size of a leaf of the Iowa Reports,—about five inches in width by eight inches in length,—and into this restricted space there is crowded in small type all the matter hereinbefore quoted, containing some 4,000 words, sufficient, when set in type such as is ordinarily used in our printed records, and single spaced, to fill nine full pages of the abstract. It includes, as will be seen, a multitude of conditions, stipulations, reservations, exceptions, and waivers, skillfully devised to restrict the liability of the seller within the narrowest possible limits, and to leave no avenue of escape from liability on part of the purchasers. It is conceded that upon this order the defendant received and paid for two shipments of ten barrels each, the last shipment being near the expiration of the contract time for delivery, as fixed by the order of November 1, 1920. On November 2, 1920, defendant acknowledged receipt of the last shipment, but objected to it on the ground that it was not "old wheat flour," as required by the agreement, and saying:

"If you have none of the old wheat flour, the jig is up, and I will look elsewhere."

Since that time, defendant has refused to be bound by the contract, and denies liability for damages. To his complaint as to the kind and quality of the flour, plaintiff wrote defendant, saying that it had "checked up the matter," and was unable to find that anything but old wheat flour was shipped, but adding, "Of course it may be possible that our warehouse sent you the wrong flour through error although they advise that the flour set aside for you was sent," and expressing a willingness to "replace it if it is not giving entire satisfaction." Nothing further being done, plaintiff again wrote defendant, December 6, 1920, asking him to designate the date or dates on which he wished the remainder of the order shipped; and to this defendant responded, again complaining of the alleged failure of plain-

tiff to deliver the proper kind and quality of flour, and declining to give any further directions or instructions. On January 24, 1921, plaintiff wrote defendant, informing him that, because of his failure to give shipping instructions, the time for delivery of the flour had been extended without notice to December 1, 1920, again to December 31, 1920, and still again to January 31, 1921; and that, unless he sooner gave instructions, plaintiff would terminate the contract on January 31, 1921, and charge him with damages. Defendant still refusing to take any action in the matter, this action was brought, to recover as stipulated damages the sum of $428.45, with interest.

The defendant, answering the claim thus made, admits that he gave the plaintiff's agent an order for 100 barrels of old wheat flour, and alleges that said agent represented to him that the flour would be old wheat flour, and that, if defendant should not be satisfied with its quality, he might at any time cancel the order for any part of the flour not already shipped to him, and refuse to receive the undelivered remainder; and that, in reliance upon such representation and promise, said order was executed. He further alleges that no agreement was ever made between him and plaintiff as to the measure of damages to apply in the event of his refusal to receive the flour; that the printed part of said order was in no manner mentioned or discussed between himself and plaintiff or the salesman, nor was it read to him or by him; and that said provisions constituted no part of the contract or agreement actually made. He further denies the alleged agreement giving the plaintiff the right to extend the time for delivery of the flour indefinitely and repeatedly for 30-day periods without his consent, and alleges that the same is without mutuality, against public policy, and void. The defendant also pleads a counterclaim for damages on account of the inferior quality of the flour in the second shipment of ten barrels received by him.

The answer was not attacked by motion or demurrer, but plaintiff joined issue thereon by reply in denial.

Aside from the matters already stated, concerning which there is little or no conflict, the plaintiff's testimony was confined to an offer in evidence of copies of the Minneapolis Daily Market Record, quoting the price of No. 1 spring wheat on July

28, 1920, and again on January 31, 1921, and to proof of circumstances tending, as was claimed, to show that the flour delivered to plaintiff was of the quality and kind ordered.  The defendant, testifying in his own behalf, says that he is an experienced baker, and knows the difference between old wheat flour and flour from new wheat; that they differ materially in quality and value; and that the last shipment to him by the plaintiff proved not to be old wheat flour, and could not be made into a good quality of bread.  He further says that the matter contained in the fine-print part of the contract was not called to his attention, nor was it read to him or in his presence, nor were the terms therein the subject of any discussion or negotiation between him and the agent; and that, because of the condition of his eyesight, and because he was then without glasses, he could not read such matter for himself.  The agent, as a witness for plaintiff, also says, upon cross-examination, that his conversation with defendant did not exceed 25 or 30 minutes; that the blank used was not produced by him until they had agreed upon the "price, kind of flour, and dates of delivery;" and that, when that was done, he proceeded to fill out the contract,—nothing being said about the added pargraphs in print,—and handed the paper to defendant, who signed it at once.  He further says:

"I did not read the contract to him.  He did not read it in my presence.  When it was signed, he took the duplicate.  I took the contract.  That was all that was done."

At the close of the testimony, plaintiff moved for a directed verdict in its favor for the amount of its claim.  Defendant also presented a similar motion in his own behalf.  The plaintiff's motion was denied, and the defendant's sustained.  Verdict for defendant was returned accordingly, and judgment rendered thereon against plaintiff for costs.

I.  In logical order, perhaps, we should first consider whether, assuming the contract to be a valid one, the evidence shows an actionable breach thereof by the defendant.  That defendant did enter into an agreement to purchase from plaintiff 100 barrels of old wheat flour at a stated price, the same to be "shipped by the plaintiff November 1, 1920, on directions

1. SALES: remedies of seller: contract provision *in re* damages.

to be furnished by defendant," is not open to dispute, under the record. From this starting point, and without here pausing to discuss the effect of the clauses added to the contract, let us look at the situation and rights of the parties resulting from defendant's failure to call for the delivery of the 80 barrels within the stated period, expiring November 1, 1920. That this contract contemplated the delivery of the entire 100 barrels not later than November 1st, is very clear; and if plaintiff was ready and willing to make such delivery on the date named, and defendant, without sufficient justification, neglected or failed to receive and pay for the goods, the right to recover damages resulting from such failure could not be questioned. Such damages, under the ordinary rule, would be the difference between the contract price and the market price at the time and place stipulated for delivery. In this contract, while it is not so expressly stated, it is open to fair inference that the parties contemplated the right of defendant to have the flour shipped to him from time to time in parts or parcels, as he might need, during the period ending November 1st, at which date the delivery was to be complete, unless the time therefor should be extended by mutual consent. At the expiration of the stipulated period, as we have seen, but 20 barrels had been delivered. Defendant did not demand delivery of the remainder, and plaintiff did not tender delivery until January, 1921, though professing its readiness to deliver at all times after November 1, 1920. It follows of necessity that plaintiff's right to recover damages, if any it has sustained, matured as of the last mentioned date, unless we

2. CONTRACTS: construction: construction against drafter.

are required to hold that, by virtue of the peculiar terms and conditions found in and upon the form of contract, the time of performance was extended to a later day. Assuming, for the present, the validity of those terms and conditions, we think they do not have the effect claimed for them. To say the least, such contract should be construed most strongly against the plaintiff, who framed and prepared it.

The position taken by the plaintiff upon this appeal is that, notwithstanding the fact that defendant failed to call for the delivery of the 80 barrels of flour within the contract period,

3. CONTRACTS: construction: reasonableness *in re* damages.   and expressly repudiated his obligation to do so, and expressly refused to give any shipping directions therefor, or in any manner to further perform such contract, it was yet competent for plaintiff to treat such repudiation as equivalent to a request to extend the time of performance for an indefinite succession of 30-day periods, until plaintiff should itself elect to terminate it. Such a construction of the agreement is so manifestly unreasonable that we must presume it was not so intended. Nor is it necessary to so construe it, to give effect to the apparent intention of the parties. Turning to the terms of the first paragraph of the printed conditions of the contract, we find that the provision for extension of time is made applicable where the *"buyer indicates a desire* to.have any shipping date extended but fails to specify a substitute date, or proposes an extension or substitute date not satisfactory to seller, the seller may if it desires'' extend the shipping date not more than 30 days, ''giving the buyer notice by mail or telegram.'' In this case, it appears that the buyer not only did not indicate a desire for an extension of the time of delivery, but expressly refused further performance of the contract; nor did the seller by mail or telegram notify defendant of any such extension. To avoid the obvious effect of these facts, plaintiff has recourse to the terms found in the fourth paragraph of said printed matter, among which is the following:

''If specifically written on face hereof that buyer shall furnish shipping directions, buyer shall be obliged to notify seller of date or dates for shipment which shall not be later than 'shipping date;' * * * and his failure to do so shall give seller right as to any of the within goods remaining unshipped by reason thereof to either (a) treat the contract as if rescinded; or (b) extend 'shipping date' 30 days, and thereafter (as long as buyer's said failure or refusal continues) continue the life hereof by as many such successive extensions as seller may desire; or (c) ship such goods within 30 days after 'shipping date,' * * * or (d) terminate contract (as to such unshipped goods only) * * * and recover * * * damages.''

It is there still further provided that, in case of the buyer's default, and in case the seller does not give notice of his purpose

to exercise either Option "a," "c," or "d," it shall be deemed an election to proceed under Option "b," and "this contract shall automatically extend itself" as to goods not delivered, for 30 days at a time, until the buyer furnishes directions for the shipment, or until such time as the seller may elect to proceed under some other option. It is argued that, under these provisions, plaintiff could rightfully ignore defendant's express refusal to perform the contract, and by virtue of the automatic self-acting and self-extending energy thereof, continue it in full force and life indefinitely, until the plaintiff, of its own will or pleasure, should elect to acknowledge the violation by declaring the termination of the contract and setting up its claim for damages. The effect of this, as will be readily seen, is to postpone the date of the maturity of plaintiff's claim for damages, if any, from November 1, 1920, when the contract period of delivery expired and defendant definitely repudiated his obligation, to some time in the indefinite future, when plaintiff may think the market fluctuations in the value of wheat and flour have reached the stage promising the highest possible assessment of damages. We cannot conceive that such intent is properly to be found in the language of the instrument, nor can we conceive the legal possibility of framing an executory contract in such drastic terms that either party thereto may not withdraw therefrom and refuse performance, subject, of course, to his liability for damages, if his action be without justification. Subject to his liability to such damages, the right to refuse performance inheres in every executory contract, no matter how stringent or specific. *Hochster v. De La Tour,* 2 E. & B. 678; *Clark v. Marsiglia,* 1 Denio (N. Y.) 317; *Danforth & Co. v. Walker,* 37 Vt. 239; *Ward v. American Health Food Co.,* 119 Wis. 12 (96 N. W. 388, 391); *Gibbons v. Bente,* 51 Minn. 499. True, there is a class of contracts of purchase in which the buyer's refusal of performance may not excuse him from payment of the full agreed price; but that question is not here presented. Plaintiff does not sue for the contract price of the flour, but for damages for defendant's failure to take and pay for the undelivered portion of the goods. Damages so arising are to be assessed upon the theory of compensation as of the date of the breach by the defendant, if such breach be shown. It appears beyond dispute that such breach

occurred, if at all, November 1, 1920. That was the date expressly fixed by the contract, and that was the date when defendant refused to further perform. The appellant, in its reply argument in this court, recognizes the situation in that respect by saying, in justification of its own failure to make any actual tender, that:

"Plaintiff certainly was justified in assuming, until November 2d, that defendant would order the flour as he desired it shipped, and on that day defendant, in a letter to plaintiff, declared, in so far as the contract was concerned, that the 'jig is up,' or in other words, the contract was off, *thus abrogating the contract* and bringing this case within the rule of the *Sheffield-King* and other similar cases. It certainly cannot be said that, after the letter of November 2d, the plaintiff was required to ship more flour without shipping directions, and none were thereafter given. In fact, *the record shows that, from that time, if not before,* defendant had no intention of going on with his contract."

This statement by counsel is a frank recognition of the fact that defendant's final refusal to perform occurred not later than November 2d, and that, because thereof, plaintiff was no longer under duty or obligation to make any further delivery or tender. Such being the case, the law fixes the time of the breach as being the date at which plaintiff's right of action for damages accrued, and the burden is on the plaintiff to prove its damages as of that date, whether they are to be computed and assessed according to the general rule of law or according to the alleged stipulation in the contract. The stipulation, if it be valid, does not specify or fix a specific sum or amount of recoverable damages, but simply provides the rule by which such amount is to be computed. No evidence was offered as to the value of the flour or of the equivalent amount of wheat on November 1st or November 2d, or of any decline in the market price which had *then* taken place; but the showing sought to be made was limited entirely to January 31, 1921,—three months after the time when, according to the undisputed showing and plaintiff's admission in argument, the contract had been "abrogated" or repudiated by defendant, and plaintiff had thereby been relieved from any further obligation to deliver the flour.

If by contract the property sold is to be delivered as ordered within a stated period of time, the arrears in the total amount become due and deliverable on the last day, and the market price on *that* day is to be taken as the standard. 3 Page on Contracts (1st Ed.) Section 1590. Says the same author (Section 1435) :

"A breach which goes to the entire performance may relieve the party in default from further liability under the contract, except to pay damages occasioned by such breach. * * * The adversary party cannot ignore the breach, perform the covenants * * * on his part to be performed, and recover the entire contract price, as if no breach had occurred."

In the case of *Chapman v. Ingram,* 30 Wis. 290, 295, the plaintiff sued for damages by reason of the defendant's refusal to receive and pay for lumber to be delivered during a certain season; and of the rule for measurement of damages and of the time when they accrued, the court says that, where the vendor "is ready and willing to perform, and offers to do so, but the vendee refuses, even though the title is not vested in the vendee, the vendor still has his action on the contract for damages. But the rule of damages in such case would be the actual injury sustained, which is ordinarily the difference between the value of the property *at the time of the refusal,* and the price agreed on." In *Badger St. Lbr. Co. v. Jones Lbr. Co.,* 140 Wis. 73 (121 N. W. 933), the same court repeats the rule that, where a party to a contract for the sale and delivery of property renounces it and refuses to perform, "the right of the parties must be determined *as of that date.*" Indeed, we think no court has ever held otherwise.

We think there is no merit in the further claim of the appellant that the peculiar provisions of the contract in the form in which it is pleaded and put in evidence permit it to recover damages as of January 31, 1921, long after the time when, even on its own theory of the facts, the defendant had definitely refused to perform. The right of the defendant to refuse performance (subject to his liability to damages) goes to the entire contract; and plaintiff may not, by subsequent tenders or offers or demands, preserve the life and efficacy of such contract for the purpose of enhancing its recovery by adding thereto other

damages accruing after the date when the time of delivery matured, and the contract was renounced.   Plaintiff's references to *Sheffield-King Milling Co. v. Jacobs,* 170 Wis. 389 (175 N. W. 796), and *Sheffield-King Milling Co. v. Domestic Science Bak. Co.,* 95 O. St. 180 (115 N. E. 1014), do not aid us any at this point.   Though both of the cited cases involve a contract substantially like the one here sued upon, neither attempts to treat the subject we are now discussing.   The controlling question in each case was the validity of the stipulation for the computation of damages, and in neither was there any attempt to construe or give effect to the provision by which the appellant in the present case claims the right to ignore the legal effect of defendant's refusal to perform, and thus continue the life of the contract indefinitely into the future, with a constantly expanding claim for damages.   In this connection, we think it unnecessary to consider or decide the question relating to the measure of damages.   The demand for recovery is based upon the proposition that the contract was terminated only by the act of the plaintiff itself on January 31, 1921, and the only evidence offered is of damages alleged to have been sustained as of that date.   The testimony offered to show decline in the market value of flour or of its equivalent in wheat after the making of the contract relates solely to the date thus arbitrarily fixed by the plaintiff, three months after the right of action, if any, had accrued.   That such is the plaintiff's theory of its case is shown by the declaration in its brief that "the only proof necessary for the computation of damages due plaintiff is proof of the price of wheat on the date of the contract, July 28, 1920, and the date of the termination of the contract, January 31, 1921." Such evidence is clearly insufficient to sustain a recovery of damages in this case, and there was no prejudicial error in the trial court's ruling directing a verdict for defendant.

II.   There is another feature of the record not argued by counsel, but proper to be considered in support of the ruling complained of.   As we have noted in our preliminary statement, the answer filed by the defendant was not challenged by motion or demurrer, and issue was joined by reply upon the matters pleaded by way of defense and avoidance.   According to

4. APPEAL AND ERROR: presentation of error to trial court: failure to question defense.

the settled rule in this state, if matter so pleaded as a defense is not so challenged, and is proved, it is sufficient to defeat the plaintiff's action, although it might have been held insufficient, had the question been raised or the objection made by motion or demurrer in the settlement of the issues. *First Nat. Bank v. Zeims*, 93 Iowa 143; *Conger v. Crabtree*, 88 Iowa 536; *Linden v. Green*, 81 Iowa 365; *Zundelowitz v. Webster*, 96 Iowa 587; *Martin & Turner v. Widner*, 91 Iowa 459, 461; *Great Western Printing Co. v. Tucker*, 73 Iowa 755, 756; *Heiman v. Felder*, 178 Iowa 740, 751; *Roberts v. Ozias*, 179 Iowa 1141, 1143. The answer in the present case did plead, by way of defense, certain alleged representations and promises by the plaintiff's sales agent at the time the contract was obtained, and alleged, in substance, that the inclusion of the printed conditions and stipulations in the contract was obtained without defendant's knowledge or consent, and constituted no part of the agreement; and that such contract was made subject to the express agreement that defendant should be entitled to cancel it and refuse to accept any further shipments whenever the flour sent him proved unsatisfactory; and that the second shipment received was not, in fact, of the required kind and quality,—whereupon he exercised his right to refuse further deliveries. All these matters so pleaded were shown by the evidence, and for the most part, without dispute, excepting, perhaps, the truth of defendant's objection to the flour delivered. The fact that the printed conditions referred to were not mentioned or discussed between the parties, and were not read to or by the defendant, is conceded by the agent, and defendant, being unable to read it, because of the condition of his eyesight, had no knowledge of their inclusion in the order. Without discussing the question whether the matter so pleaded would be regarded as a sufficient defense, had it been attacked by motion or demurrer, we think that, under the rule of the precedents referred to, the trial court did not err in holding that no right of recovery was shown.

III.  In view of our conclusion that the judgment appealed from may be affirmed upon grounds already discussed, we do not attempt to decide the question raised by counsel, whether the order in suit discloses upon its face a legally enforcible contract. It is enough at this time to say that, if it be a contract,

it is like the Apostle's conception of the human frame, "fearfully and wonderfully made," and one upon the construction and effect of which a competent and experienced lawyer may spend days of careful study, without exhausting its possibilities. The solution of the question may well await· the coming of a case the proper decision of which depends upon its answer.

The record discloses no prejudicial error of which plaintiff may properly complain, and the judgment of the trial court is— *Affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.